**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC. and WHATSAPP LLC,[1]<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:21-cv-00665-ADA<br><br>JURY TRIAL DEMANDED |
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:21-cv-00667-ADA<br><br>JURY TRIAL DEMANDED |
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:21-cv-00668-ADA<br><br>JURY TRIAL DEMANDED |

[1] Defendants have filed a notice of name change and unopposed motion to correct the docket in Case No. 6:21-cv-00665-ADA.

| | | |
|---|---|---|
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:21-cv-00672-ADA<br><br>JURY TRIAL DEMANDED |
| VOIP-PAL.COM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:21-cv-00674-ADA<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND OF THE PATENTS ..... 1

III. AGREED CLAIM CONSTRUCTIONS ..... 2

IV. ARGUMENT ..... 2

A. "roaming" ('234 patent, claims 1, 19, 28, 30, 46, 62; '721 patent, claims 34, 49) ..... 2

B. "callee identifier" ('234 patent, claims 1, 11, 20, 25, 28, 30, 46, 62) ..... 5

C. "access code" ('234 patent, claims 1, 10, 11, 19-21, 25, 28, 30-33, 38, 40, 43, 45-48, 54, 61, 62, 64, 65, 70, 72, 75; '721 patent, claims 1, 14, 16, 20, 34, 38, 39, 46, 49-51, 57, 63, 77, 103, 104, 109, 110, 124, 130, 135, 138-40) ..... 7

D. "access code request message" ('234 patent, claims 1, 10, 11, 19-21, 28, 30, 31, 40, 46, 47, 62, 72; '721 patent, claims 1, 16, 20, 34, 38, 39, 49-51, 77, 103, 104, 135) ..... 9

"access code reply message" ('234 patent, claims 1, 10, 11, 19, 20, 25, 28, 30, 43, 45, 46, 61, 62, 75; '721 patent, claims 1, 16, 20, 34, 38, 46, 49-51, 77, 103, 124, 135, 138-40) ..... 9

E. "pool of access codes" ('234 patent, claims 1, 11, 20, 30, 38, 46, 54, 57, 62, 70; '721 patent, claims 63, 109) ..... 10

F. "local call" ('234 patent, claims 1, 11, 20) ..... 12

G. "means for initiating a call using said access code to identify the callee" ('234 patent, claim 11) ..... 14

H. "means for selecting said access code from a pool of access codes" ('234 patent, claim 46) ..... 16

I. "gateway" ('721 patent, claims 1, 20, 38, 51, 77, 103, 133) ..... 18

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011)........................................................................................6

*In re Aoyama*,
656 F.3d 1293 (Fed. Cir. 2011)......................................................................................18

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008)................................................................................16, 17

*Kumar v. Ovonic Battery Co.*,
351 F.3d 1364 (Fed. Cir. 2003)..................................................................................4, 20

*Legends, Inc. v. Upper Deck Co.*,
No. H-09-3463, 2010 WL 4817050 (S.D. Tex. Nov. 17, 2010) ..............................................3

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
814 F.3d 1343 (Fed. Cir. 2016)....................................................................................5, 6

*Merck & Co. v. Teva Pharms. USA, Inc.*,
347 F.3d 1367 (Fed. Cir. 2003)........................................................................................7

*O2 Micro Int'l v. Beyond Innovation Tech.*,
521 F.3d 1351 (Fed. Cir. 2008)..................................................................................4, 20

*Proveris Sci. Corp. v. Innovasys., Inc.*,
739 F.3d 1367 (Fed. Cir. 2014)........................................................................................2

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
853 F.3d 1370 (Fed. Cir. 2017)........................................................................................5

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011)......................................................................................10

*SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*,
983 F.3d 1367 (Fed. Cir. 2021)........................................................................................2

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008)......................................................................................11

**Statutes**

35 U.S.C. § 112(b) ......................................................................................................14

## I. INTRODUCTION

The primary claim construction disputes between the parties regarding asserted U.S. Patent Nos. 8,630,234 (Ex. 1[2]) ("the '234 patent") and 10,880,721 (Ex. 2) ("the '721 patent") concern technical terms that will either not have a known meaning to a lay jury or are prone to different interpretations across different generations of jurors. Defendants have proposed constructions supported by the intrinsic evidence and consistent with the meaning of the terms in the art, where the disputed terms have such a defined meaning. Plaintiff's repeated proposal of "plain and ordinary meaning" fails to inform the jury of what the terms mean and will lead to improper claim construction disputes at trial. The Court should thus define the disputed terms.[3]

## II. BACKGROUND OF THE PATENTS

The '234 and '721 patents relate to the field of telecommunications and, more specifically, to initiating a mobile phone call. Ex. 1, 1:11-14.[4] Traditional long-distance calls cost more than local calls. *Id.*, 1:16-17. A common technique to avoid long-distance charges was to use a "calling card," which would provide, for example, a local or toll-free number that a user could call to avoid long-distance charges. *Id.*, 1:20-26. But, as the applicant explains, the use of a calling card can be complicated and cumbersome. *Id.*, 1:28-32.

The '234 and '721 patents describe an alternative way to avoid long-distance charges on a mobile device. In the disclosed system, a mobile caller enters the callee's number. The phone service receives the callee number, assigns it a temporary local number owned by the phone

---

[2] Unless otherwise noted, all exhibit citations refer to exhibits to the declaration of Robert W. Unikel, filed concurrently herewith.

[3] The parties also disagree as to the corresponding structure for certain means-plus-function terms, some of which are briefed below. Other disputed means-plus function terms are not briefed here due to the Court's limits. Pursuant to the Court's February 18, 2022 email order, Defendants intend to address the additional means-plus-function terms later in the case.

[4] Defendants cite to the '234 patent specification, but the '721 patent specification is materially identical.

service, and returns that number to the mobile caller. *Id.*, 11:34-13:04. The mobile device can then use that local intermediary number to initiate a call to the callee. *Id.* By placing the call through the local intermediary number, long-distance charges can be avoided.

## III. AGREED CLAIM CONSTRUCTIONS

The parties agree on the claim constructions identified in Appendix A.

## IV. ARGUMENT

### A. "roaming" ('234 patent, claims 1, 19, 28, 30, 46, 62; '721 patent, claims 34, 49)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Preamble is limiting. Plain and ordinary meaning of "roaming" is "being in another mobile telephone service provider's network and not the mobile telephone's home network" |

The preambles in these claims are limiting because they are "necessary to give life, meaning, and vitality" to the claims. *Proveris Sci. Corp. v. Innovasys., Inc.*, 739 F.3d 1367, 1372–73 (Fed. Cir. 2014). These preambles give the claims meaning because they provide antecedent basis for other claim elements:

- The preambles of claims 1, 19, 28, 30, 46, and 62 of the '234 patent recite "roaming [by/with] a mobile telephone" or "mobile telephone roaming," which provide antecedent basis for "***the*** mobile telephone" recited later in those claims.[5] *Proveris*, 739 F.3d at 1373 (finding a preamble limiting because its "producing image data" provided antecedent basis for "***the*** image data" recited later).
- The preambles of claims 34 and 49 of the '721 patent recite "roaming by a wireless apparatus," which provides antecedent basis for "***the*** wireless apparatus" recited later in those claims.

The Federal Circuit has "repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim." *SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1375 (Fed. Cir. 2021).

[5] All emphasis added and internal drawing references omitted, unless otherwise noted.

The prosecution history also shows that the preamble is limiting due to the "roaming" element itself. During the '234 patent's prosecution, the applicant amended the preamble of representative claim 1 to require "roaming with a mobile telephone," striking language that merely required "~~initiating a call to a callee using~~ a mobile telephone." Ex. 3 (May 24, 2013 Resp. to NFOA), VOP0008174. If the preamble is not construed to be limiting, then the claimed method could still be directed to any "call to a callee"—whether roaming or not—which the applicant expressly disclaimed during prosecution. Moreover, prior art mobile phone systems that "charge significant fees" ***for roaming*** were expressly distinguished in the Background (Ex.1, 1:15-19), further evidencing that the claims were limited to purported improvements in methods and systems for roaming specifically. *Legends, Inc. v. Upper Deck Co.*, No. H-09-3463, 2010 WL 4817050, at *4–6 (S.D. Tex. Nov. 17, 2010) (holding that preamble was limiting where, "in the Background section, the patentee distinguished prior art").

The preambles of all of the independent claims identified above recite the term "roaming." The plain and ordinary meaning of "roaming" in the call routing field is "being in another mobile telephone service provider's network and not the mobile telephone's home network." During prosecution, the applicant described "conventional roaming" as involving "engaging other mobile telephone service providers" in a way to cause an "associated loss of revenue by the home service provider." This only occurs when a user's phone is connected to another mobile telephone service provider's network and not to the user's home network. Ex. 3 (May 24, 2013 Resp. to NFOA), VOP0008208-09. Defendants' construction is also taken nearly verbatim from the specification, which states: "Mobile telephone service providers often charge significant fees for long distance telephone calls, particularly when the mobile telephone is ***roaming in another mobile telephone service provider's network***." Ex. 1, 1:16-19.

Additional intrinsic evidence further supports Defendants' construction. During prosecution, the applicant submitted the Wikipedia entry for "Roaming" to the Examiner, making that document intrinsic evidence. Ex. 4 (Sept. 13, 2013 IDS), VOP0008080; *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003). Wikipedia (Ex. 5) defined "Roaming" as follows:

> [R]oaming is a general term referring to the extension of connectivity service in a location that ***is different from the home location*** where the service was registered. . . . Traditional GSM [Global System for Mobile Communications] roaming is defined (cf. GSM Association Permanent Reference Document AA.39) as the ability for a cellular customer to automatically make and receive voice calls, send and receive data, or access other services, including home data services, ***when traveling outside the geographical coverage area of the home network***, by means of using a visited network.

Plaintiff's extrinsic evidence also supports Defendants' construction. Plaintiff cited "Understanding Telecommunications Networks" for its view that no construction is needed. That reference states "a call between two terminals belonging to mobile network A, but [where] the second terminal has moved temporarily onto (i.e. visiting) mobile network B [is] a process known as 'roaming.'" Ex. 6, VOP0009420. Defendants' construction adopts the recognized understanding of the term as reflected in the intrinsic and extrinsic evidence.

Plaintiff proposes "plain and ordinary meaning," without specifying what that plain and ordinary meaning is, nor explaining whether Defendants' proposed construction is or is not the plain and ordinary meaning. Plaintiff's lack of construction would only cause confusion and disputes over the meaning of this term, particularly for younger jurors who have not seen roaming charges on cell phone bills. *See O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

### B. "callee identifier" ('234 patent, claims 1, 11, 20, 25, 28, 30, 46, 62)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "telephone number, and not a username"[6] |

"Callee identifier" is not an industry term that has a single meaning to a POSITA. The jury will thus need guidance in applying this term to the accused instrumentalities and prior art. Defendants' construction provides this guidance and should be adopted because it is consistent with the claim language and is required by the specification and prosecution history.

First, Defendants' construction is required by the prosecution history. To overcome prior art rejections, the applicant repeatedly defined the callee identifier as a "number" through the use of "i.e." Ex. 3 (May 24, 2013 Resp. to NFOA), VOP0008204-05 ("callee identifier (i.e., dialed number)"). *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1376 (Fed. Cir. 2017) ("A patentee's use of 'i.e.,' in the intrinsic record, however, is often definitional."). The applicant should be bound by its definition of "callee identifier" as a number.

Second, the specification contains a clear and unmistakable disavowal of claim scope limiting the "callee identifier" to a telephone number and not a username. Any construction must reflect this to prevent recapture by the patent owner of what was disclaimed. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016). The specification states that, while embodiments covered by a ***separate*** patent application disclose a callee identifier that includes a username, the invention, as a whole, in this specification does not. Ex. 1, 29:61-64 ("In alternative embodiments, such as those illustrated [***in a separate patent application***] an additional

[6] Defendant Google LLC ("Google") does not join the other Defendants' proposed construction and instead believes that this term does not require construction.

block . . . may determine whether the callee identifier is a valid username.").[7] But the specification is clear that "***in the embodiment disclosed herein, the callee identifier is*** assumed to be ***a telephone number*** of the callee, ***and not a username***." *Id.*, 29:61-67. The Federal Circuit has repeatedly held that "a statement in a specification that describes the invention as a whole can support a limiting construction of a claim term." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1334 (Fed. Cir. 2011); *Luminara Worldwide*, 814 F.3d at 1353 ("We have found disavowal or disclaimer based on clear and unmistakable statements by the patentee that limit the claims, such as . . . 'all embodiments of the present invention are . . . .'" (citations omitted)). The applicant, in describing this single embodiment, limited the scope of "callee identifier" to telephone numbers and not a username.

The specification's remaining passages also exclusively describe the "callee identifier" as a telephone number. For example, the specification is clear that "[a] callee identifier associated with one of the channels 20, 22, and 24 may be a telephone number of a PSTN telephone 32 . . . or it may be a telephone number of a VoIP telephone 36 . . . ." Ex. 1, 9:63–10:1; *see also, e.g.*, *id.*, FIGs. 10, 14, and 17; 11:39-41; 18:38-46. Next, the specification consistently describes the username as separate from the callee identifier. *See, e.g.*, *id.*, 11:59-62 ("The access code request message 110 includes a username field 112, a password field 114, a callee identifier field 116, and a caller identifier field 118."); FIG. 4 (username 112 and callee identifier 116). The applicant's statements disavowing claim scope and the consistent use of "callee identifier" as a telephone number—and not a username—support Defendants' construction.

[7] The embodiment disclosed in that separate application does not describe or use access code requests or reply messages, and therefore the "callee identifier" referenced in that application is used for a different purpose than the "callee identifier" in the asserted claims of the '234 patent.

Finally, Defendants' construction is also consistent with the use of the phrase "callee identifier" in the claims, which do not include the term username or describe any such functionality.

### C. "access code" ('234 patent, claims 1, 10, 11, 19-21, 25, 28, 30-33, 38, 40, 43, 45-48, 54, 61, 62, 64, 65, 70, 72, 75; '721 patent, claims 1, 14, 16, 20, 34, 38, 39, 46, 49-51, 57, 63, 77, 103, 104, 109, 110, 124, 130, 135, 138-40)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "code used by the [mobile telephone / wireless device / wireless apparatus] in place of the callee identifier" |

Defendants' construction of "access code" provides clarity to the jury by defining the requisite relationship between the "callee identifier" and "access code." Defendants' construction of "access code" additionally ensures that the term is defined in a manner consistent with the specifications and prosecution histories of the '234 and '721 patents. *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (construction must be consistent with specification).

While "access code" does have an established "plain and ordinary meaning" in the telecommunications field, the patents do not use the term consistent with that meaning. The "plain and ordinary meaning" of "access code" is "[t]he preliminary digits that a user must dial to be connected to a particular outgoing trunk group or line."[8] Ex. 7, DEFS-VOIP-2021-CC-00000052 (defining "access code"). Based on the inclusion of the word "preliminary" in this definition, a POSITA would understand that the preliminary digits referenced in the plain and ordinary meaning of "access code" do not comprise the entirety of a phone number and are, instead, just a portion of a phone number. An "area code" is understood to be an example of these preliminary digits. *See*

---

[8] Plaintiff proposed an unspecified "plain and ordinary meaning" for this term but does not clarify what that plain and ordinary meaning is or whether it aligns with the Federal Standard.

*id.*, DEFS-VOIP-2021-CC-00000053 (defining "area code" and referencing "access code"). In the patents, however, "access code" does not mean "area code" or analogous preliminary digits. Instead, the patents explain that the access code identifies a particular ***channel*** (*e.g.*, the service provider's telephone number) to initiate a call, rather than the preliminary digits of a trunk line or group. Ex. 1, 13:40-42 ("the access code . . . is a telephone number identifying a channel 20, 22, or 24").

Moreover, throughout the specifications, "access code" is exclusively identified as a code that is both different from a "callee identifier" ***and*** used by a mobile telephone. For example, the patents explain that "the access code ***is different from*** the callee identifier . . . ***in that the access code identifies a channel***, other than that provided by the callee identifier provided by the dialing function . . . that the mobile telephone [] can use to initiate a call to the callee." *Id.*, 12:66-13:4. This explanation is repeated and supported throughout the specifications. *See, e.g.*, *id.*, 14:34-37 ("[T]he access code ***is different from the callee identifier*** . . . and is usable by the mobile telephone [] to initiate a call to the callee using the channel . . . .").

Further, during operations where the access code is used to place a call, both the patent specifications and the '234 patent's prosecution history clarify that the access code is used instead of the callee identifier. The specifications explain that, while conventional calling processes directly place a call using a callee identifier, the purported improvement of the invention instead uses an access code in place of the callee identifier to avoid long-distance or roaming charges. *Id.*, 13:5-8 ("[T]he access code facilitates avoidance of long-distance or roaming charges that a mobile telephone service provider would charge for a call placed directly using the callee identifier . . . ."). And during prosecution of the '234 patent, the applicant confirmed that this feature—*i.e.*, the use of an access code ***instead of*** a callee identifier—is core to the purported invention. Specifically, in summarizing the method claimed in the then-pending claims, the applicant explained that "the

mobile phone automatically dials the access code" and that this process "occurs transparently to the user and the user may have no idea the mobile telephone is ***actually calling a different number than the one associated with the contact in the contact list*** [*i.e.*, a callee identifier]." Ex. 3, VOP0008208 (May 24, 2013 Resp. to NFOA).

In short, the meaning of "access code" is clear, and it cannot be construed in a manner that encompasses a callee identifier. While conventional calling processes use a callee identifier (such as the callee's phone number) to directly place a call, these calls may be prone to additional long-distance or roaming charges, a problem that the applicant sought to avoid. To rectify this, the disclosure requires the use of an access code ***instead of*** a callee identifier to initiate a call.

**D. "access code request message" ('234 patent, claims 1, 10, 11, 19-21, 28, 30, 31, 40, 46, 47, 62, 72; '721 patent, claims 1, 16, 20, 34, 38, 39, 49-51, 77, 103, 104, 135)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "message sent from the [mobile device / wireless device / wireless apparatus] and received by the access server"[9] |

**"access code reply message" ('234 patent, claims 1, 10, 11, 19, 20, 25, 28, 30, 43, 45, 46, 61, 62, 75; '721 patent, claims 1, 16, 20, 34, 38, 46, 49-51, 77, 103, 124, 135, 138-40)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "message sent from the access server and received by the [mobile device / wireless device / wireless apparatus]"[10] |

[9] Google and Amazon do not join the other Defendants' proposed construction and instead agree with Plaintiff's proposed construction.
[10] Google and Amazon do not join the other Defendants' proposed construction and instead agree with Plaintiff's proposed construction.

Plaintiff seeks construction of the terms "access code request message" and "access code reply message," but proposes that these terms be prescribed their plain and ordinary meaning, without explaining what that meaning is. Defendants believe no construction is necessary at this time.

To the extent any construction is needed, the plain claim language requires Defendants' constructions, and Plaintiff has not explained whether or how Defendants' constructions differ from the plain and ordinary meaning, seemingly seeking to preserve ambiguity. Plaintiff seems to contend that, at least for some claims, the sender and recipient can be some (unspecified) other device. Neither the specification nor the claims themselves permit that result. Defendants request the Court confirm as much, which will avoid ambiguity and later disputes on this issue.

### E. "pool of access codes" ('234 patent, claims 1, 11, 20, 30, 38, 46, 54, 57, 62, 70; '721 patent, claims 63, 109)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "table containing access codes for exclusive association with a [callee identifier / destination node identifier]"[11] |

Defendants' construction of "pool of access codes" provides clarity to the jury by defining, in a manner consistent with the specifications, a term that has no plain and ordinary meaning. In particular, Defendants' construction prevents potential confusion by capturing what the specifications plainly require: each access code stored in the "pool" of access codes is exclusively associated with a particular callee identifier. Defendants' proposed construction captures the scope of the purported invention and is consistent with the specifications. *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("[W]e strive to capture the scope

[11] Google does not join the other Defendants' proposed construction and instead believes that this term does not require construction.

of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments . . . .").

As described above, the core purpose of the purported invention of the '234 and '721 patents was to cause a mobile phone to place a call to a local phone number (*e.g.*, "access code") rather than a long-distance phone number (*e.g.*, "callee identifier"). To do so, the specifications temporarily assign a provider-owned local telephone number ("access code") to a callee identifier (the originally inputted telephone number, which may be a long-distance telephone number). As the '234 patent specification explains, "the access code is different from the callee identifier . . . in that the access code identifies a channel . . . that the mobile telephone [] can use to initiate a call to the callee." Ex. 1, 12:66-13:4. If the same access code were assigned to multiple different callees, then the system would be unable to determine which callee the caller was attempting to reach. Thus, an access code in the claimed pool of access codes ***must*** be associated exclusively with only one other callee identifier at any given time. This association is required for operability. Common sense additionally requires that the association between access codes and callees must be exclusive. If an access code were simultaneously assigned to multiple callee identifiers, the access code would be inoperable to initiate a call, as there would be no indication of which callee identifier is associated with the intended callee.

Indeed, in the patent specifications, a "pool of access codes," otherwise referenced as an "access code association table," is described with respect to FIG. 10. The patent specifications explain that "each access code may identify ***a*** [singular] respective telephone number." *Id.*, 17:35-36. By using the singular "a," the patent specifications require that each access code only be associated with a single telephone number. *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008) ("[T]he question whether 'a' or 'an' is treated as singular or plural depends heavily on the context of its use. The general rule [of interpreting "a" or "an" as "one or

more"] does not apply when the context clearly evidences that the usage is limited to the singular." (citations omitted)).

The only algorithm for assigning access codes described in the patent ensures that each access code can only be associated with a ***single*** callee identifier at a time. The table that represents the "pool" of access codes includes, for each access code, a field where a single callee identifier can be written. Ex. 1, FIG. 10; 18:38-46. The algorithm that assigns access codes ensures that a callee identifier is associated with an access code ***only*** if no other callee identifier has claim to it. *Id.*, 20:40-46 ("Essentially the process 270 determines whether . . . the access code is currently available for association with a callee identifier."), 21:10-13.

### F. "local call" ('234 patent, claims 1, 11, 20)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning, which is "call within the PSTN local calling area of the mobile telephone" |

Defendants' construction of "local call" as a "call within the PSTN local calling area of the mobile telephone" is the plain and ordinary meaning of the term and supported by the '234 patent specification. In the context of telephony, a local call has an understood meaning of "[a]ny call for which an additional charge, i.e., toll charge, is not made to the calling or called party." Ex. 7, DEFS-VOIP-2020-CC-00000055 ("local call"). This definition comports with the definition of a similar term, "local calling area" in the patent specifications, and it is necessary to inform a lay jury about the meaning of this term, as younger jurors may have come of age at a time when the distinctions between local and long-distance calls had faded (*e.g.*, when major metropolitan areas had multiple area codes and cell phone plans did not distinguish between local and long-distance calls).

While the '234 patent specification does not define or otherwise directly reference a "local call," the specification does provide an explicit definition for the related term "local calling area," which is defined as "a set of telephone numbers, typically defined by a geographical region, to which telephone calls may be placed by callers within the local calling area at either no additional charge or at a lower additional charge than would be required for calls to numbers that are outside of the local calling area." Ex. 1, 9:28–34. A "local call," therefore, can only be understood with reference to the "local calling area," and the plain and ordinary meaning of "local call" must necessarily be consistent with the provided definition of "local calling area."

Moreover, "local call" is used to describe communications within a Public Switched Telephone Network ("PSTN"). That is why when "local calling area" is used in the patent specifications, a PSTN is referenced and a Voice over Internet Protocol ("VoIP") network is not. For example, as the patent specification explains, communication channels "maybe [*sic*] associated with PSTN telephone numbers in a local calling area associated with the mobile telephone 12." *Id.*, 9:24-26. Although non-PSTN networks are discussed in the specification, such non-PSTN networks are not discussed with reference to a "local calling area." *Id.*, 9:34-37 ("However, it will be appreciated that in other embodiments, the gateway 18 may be in communication with any number of channels, which need not be PSTN telephone lines.").

Additionally, charges associated with calls (*e.g.*, long-distance calls) would be understood by a POSITA as a phenomenon relevant only to traditional telephone systems. *See* Ex. 7, DEFS-VOIP-2020-CC-00000056 ("long-distance call"; "Any ***telephone call*** to a destination outside the local service area of the calling station . . . for which there is a charge beyond that for basic service."). In fact, the specification references long-distance charges "of mobile telephone service providers," which are a component of the PSTN. Ex. 1, 1:20-22.

Further, a POSITA would not be familiar with the concept of a "local call" outside of the context of a PSTN, and the '234 patent does not supply such a meaning. Attempting to apply the term outside the PSTN, therefore, would result in the indefiniteness of the term. *See* 35 U.S.C. § 112(b). As discussed above, a call is considered "local" with respect to a local calling area of a PSTN (*e.g.*, an area where additional charges are not made to a calling or receiving party). Outside the context of PSTN "area codes," the qualifier "local" quickly loses all meaning, and a POSITA would not be able to understand whether "local" refers to, for example, a location of network servers or a well-defined geographical region. And, if "local" refers to a geographical region, a POSITA would not understand what geographical boundaries are considered "local." As a "local call" necessarily references a call within a local PSTN local calling area, Defendants' proposed construction of the term is necessary to help the jury understand the claim's meaning and scope.

### G. "means for initiating a call using said access code to identify the callee" ('234 patent, claim 11)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| **Function**: initiating a call using said access code to identify the callee<br>**Structure**: Mobile wireless device 12 having a microprocessor 52 programmed to implement the algorithm illustrated in FIG. 3, which includes block 149 labeled "Initiate voice/video call using access code." The wireless device 12 includes I/O port(s) 56 capable of acting as an interface to external networks (70, 72, 15, 16). *See* FIG. 2. | **Function**: initiating a call using said access code to identify the callee<br>**Structure**: a network interface, including switched line channels in a public switched telephone network (PSTN)[12] |

The term "means for initiating a call using said access code to identify the callee" appears as the last element in claim 11 of the '234 patent. The parties agree that this is a means-plus-

[12] Google does not join the other Defendants' proposed structure and instead offers as a proposed structure "a network interface."

function limitation subject to § 112(f). The parties also agree that the claimed function for this element is "initiating a call using said access code to identify the callee."

The corresponding structure in the patent is easily identified. The claimed "means" element appears in claim 11 after three prior elements reciting (i) "means for receiving . . . a callee identifier," (ii) "transmitting means," and (iii) "means for receiving an access code reply message." Ex. 1, 35:34-56. These four functions correspond directly to the four steps recited in the patent Abstract and the four steps in the flowchart contained in FIG. 3. The '234 patent, therefore, directly associates the function of "initiating a call using said access code" with the operations described in connection with the last step in FIG. 3, which is identified as block 149 and has the label "Initiate voice/video call using access code." Plaintiff's construction indicates that it also agrees that block 149 is the relevant corresponding disclosure.

The specification gives the following explanation of the block 149 step:

> [B]lock 149 directs the microprocessor 52 to initiate a call with the mobile telephone (12) on the mobile telephone network 15 (illustrated in FIG. 1) using the access code received in the access code field 142 of the access code reply message 140 (shown in FIG. 5) to identify the callee. In the illustrated embodiment, the codes in block 149 direct the microprocessor 52 to initiate a call to the channel (20, 22 or 24) identified by the access code, using the mobile telephone network interface 72 of the I/O port 56 of the mobile telephone network (12), to engage the mobile telephone network (15).

*Id.*, 13:29-39. This description recites that the microprocessor in the mobile telephone (item 52 in FIG. 1) initiates a call to one of the available mobile telephone network service channels (items 20, 22, or 24 in FIG. 1). These channels are "associated with PSTN telephone numbers." *Id.*, 9:22-25. The channel that the processor uses is "identified by the access code." *Id.*, 13:36. If the access code is a telephone number, as the patent and claim 11 state, then it will "identify" the telephone network service channel having that same telephone number. *Id.*, 2:44, 4:14-16, 35:39-40. The corresponding structure, therefore, must include the switched line channels through which

a call is initiated based on correspondence between the telephone number of the channel and the telephone number associated with the access code. There is no disclosure in the patent of any alternative method.

Plaintiff's proposed construction must be rejected because Plaintiff identifies only a generic microprocessor and a black box (item 149 of FIG. 3) labeled with the function that it performs. No corresponding algorithm is disclosed in the patent, and a microprocessor without a corresponding algorithm is an inadequate corresponding structure. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

Claim 20 of the '721 patent includes the closely related element "means for causing the wireless apparatus to establish communications with the destination node through the communications channel identified by the access code." The "means for initiating" and "means for causing" elements have in common that they recite initiating communications using an access code in their functional recitation. Defendants have identified the same construction for both claim elements, as has Plaintiff. The Court should thus give both the same construction.

### H. "means for selecting said access code from a pool of access codes" ('234 patent, claim 46)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| **Function**: selecting said access code from a pool of access codes<br>**Structure**: Access server 14 having a microprocessor 152 programmed to implement the algorithm illustrated in FIG. 7 or an equivalent algorithm, which includes block 196 labeled "Obtain an access code." Alternatively, various embodiments of a routing controller producing an access code are disclosed at col. 15, line 7 to col. 22 line | **Function**: selecting said access code from a pool of access codes<br>**Structure**: a processor (of the routing controller), a memory storing table memory in a form given in FIG. 10, a temporary memory containing a local calling area identifier and an access code store, and a clock for selecting an access code from a pool of access codes using the algorithm given in FIG. 12[13] |

[13] Google does not join the other Defendants' proposed structure and instead offers as a proposed structure "a processor (of the routing controller) with searching access to a pool of access codes."

| | |
|---|---|
| 60, for example. In some embodiments, the routing controller is part of or integrated with the access server; see col. 17 lines 19-30. | |

For this means-plus-function limitation, the parties agree that the function is "selecting said access code from a pool of access codes." The '234 patent's system includes a "routing controller," illustrated in FIG. 8, which selects the access code. Ex. 1, 14:30-38, 14:48-54, 16:7-11, 20:23-27. The routing controller generates the access code using the algorithm described in the flow chart of FIG. 12, which the patent describes as illustrating "a process for producing an access code." *Id.*, 20:39-40. The patent specification associates the recited "pool of access codes" with the access code association table that is element 170 in FIG. 10. *Id.*, 17:33-36, 20:46-59. The routing controller further links the process of selecting an access code from the access code pool with the algorithm 270 shown in FIG. 12 and described in accompanying text. *Id.*, 20:39-57, 22:37-45.

The algorithm illustrated in FIG. 12 describes how the microprocessor of the routing controller is adapted to select an access code. *Id.*, 20:46-55, 21:10-12, 21:27-29, 21:65-66, 22:4-5, 22:11-13, 22:18-19. Using this algorithm, the microprocessor searches through the access code association table of FIG. 10, compares the data in the various table entries to the area code stored in the local calling area identifier value in the routing controller's memory (item 245 in FIG. 8), and identifies the current value of the clock (item 244). *Id.*, 20:39-55, 21:29-53. When the algorithm selects an access code from the pool, the algorithm writes it to an access code store in the routing controller's memory (item 250). *Id.*, 21:44-63. Because the access code association table, local area identifier, clock, and access code store all play essential roles in the algorithm described in the patent, they must be considered part of the structure identified for performing the function of selecting an access code from a pool of access codes. *See Aristocrat Techs.*, 521 F.3d at 1333.

Plaintiff's and Defendants' constructions have much in common. Plaintiff identifies the corresponding structure from 15:7 to 22:60 of the '234 patent specification. This includes passages that describe the structure of the access code association table of FIG. 10 (Ex. 1, 17:19-19:3) and the selection algorithm of FIG. 12. *Id.*, 20:22-22:29. But Plaintiff's construction is inadequate because it only identifies a single block in a flow chart reading "obtain callee identifier," and does not identify the actual processing structures and algorithms required to obtain the callee identifier. Similarly, the passage (*id.*, 22:45-48) cited in Plaintiff's alternative construction stating that "different data structures and algorithms may be preferable" to what is disclosed in FIGs. 10 and 12 is irrelevant. Whatever alternatives the applicant had in mind are not identified or described and, therefore, cannot serve as the corresponding structure for means-plus-function limits. *See In re Aoyama*, 656 F.3d 1293, 1298 (Fed. Cir. 2011) (finding claims indefinite where specification flowchart and text "fail to provide any structure or algorithm whatsoever" for performing function).

**I. "gateway" ('721 patent, claims 1, 20, 38, 51, 77, 103, 133)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning, which is "device that connects networks that use different communication protocols" |

The plain and ordinary meaning of "gateway," which is consistent with the specification, is "a device that connects networks that use different communication protocols." "Gateway" is defined in the dictionary as: "***A device that connects networks using different communications protocols*** so that information can be passed from one to the other." Ex. 8 (Microsoft Computer Dictionary (5th ed. 2002)), DEFS-VOIP-2021-CC-00000064; *see also* Ex. 9 (Wireless

Encyclopedia (1st ed. 2007)), DEFS-VOIP-2021-CC-00000087 ("A gateway … can ***adjust the protocols and timing between two dissimilar computer systems or data networks***.").

The '721 patent specification fully adopts this meaning. Every "gateway" disclosed acts to connect PSTN to IP networks, which use different protocols. *See, e.g.*, Ex. 2, 23:21-32 (disclosing how gateway's I/O ports interact with PSTN and IP networks). This relationship is depicted, for example, in FIG. 1 (excerpted and annotated below), where two gateways (items 18 and 34) connect a PSTN (items 29 and 32) to a different IP network (item 26). Unlike the PSTN telephone (item 32), the VoIP telephone (item 36) does ***not*** use a gateway because it is "directly in communication with the IP network." *Id.*, 9:67-10:5 ("A callee identifier associated with one of the channels 20, 22, and 24 may be a telephone number of a ***PSTN telephone 32 that is in communication with the IP network 26 through a gateway 34***, or it may be a telephone number of a ***VoIP telephone 36 that is directly in communication with the IP network*** 26, for example.").



FIG. 1

Thus, the specification requires gateways to connect IP network calls to the ***Public*** Switched Telephone Network because those networks use different protocols. *Id.*, 32:3-6 ("a ***gateway*** to the public network usable by the call controller (13) to establish a 'public system' call").

The prior art disclosed during prosecution provides additional intrinsic evidence supporting Defendants' construction. During prosecution, the applicant identified WO 01/89145 ("Foti") as prior art. *See* Ex. 10 (Dec. 23, 2013 IDS), VOP0007743; *Kumar* 351 F.3d at 1368 ("[P]rior art cited in a patent or . . . the prosecution history of the patent constitutes intrinsic evidence."). Foti states that "a ***gateway*** provides an ***interface between the circuit-switched network and the packet-switched IP network***," which as described above, are different protocols. Ex. 11 (Foti), 1:14-15. Defendants' proposed construction adopts the plain and ordinary meaning of "gateway," and echoes a POSITA's recognized understanding, as reflected in the intrinsic evidence submitted during prosecution, the specification, and technical dictionaries from the time.

Plaintiff proposes an unspecified "plain and ordinary meaning," without clarifying what that is or why Defendants' proposed construction is not the plain and ordinary meaning. Plaintiff's lack of construction would only cause confusion and disputes over the meaning of this term. *See O2 Micro*, 521 F.3d at 1360. To the extent Plaintiff's construction does not require that the gateway connect networks that use different communications protocols, there is no disclosure in the specification as to what such a gateway is or does, nor why it would be needed for communications between networks that use the same communication protocols.

## V. CONCLUSION

Defendants respectfully request that the Court adopt its proposed claim constructions.

Dated: March 11, 2022

*/s/ Joshua Glucoft*

Michael E. Jones
Texas Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

Ellisen Shelton Turner (*Pro Hac Vice*)
ellisen.turner@kirkland.com
Joshua Popik Glucoft (*Pro Hac Vice*)
josh.glucoft@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Tel: (310) 552-4220
Fax: (310) 552-5900

Kristina R. Cary (*Pro Hac Vice*)
kristina.cary@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 385-7500
Fax: (617) 385-7501

**ATTORNEYS FOR DEFENDANTS META PLATFORMS, INC. AND WHATSAPP, INC.**

*/s/ Robert W. Unikel*

Robert W. Unikel (*Pro Hac Vice*)
robertunikel@paulhastings.com
John A. Cotiguala (*Pro Hac Vice*)
johncotiguala@paulhastings.com
Matthew Lind (*Pro Hac Vice*)
mattlind@paulhastings.com
Grayson S. Cornwell (*Pro Hac Vice*)
graysoncornwell@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
Tel: (312) 499-6000
Fax: (312) 499-6100

Robert R. Laurenzi (*Pro Hac Vice*)
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000
Fax: (212) 319-4090

Matthias A. Kamber (*Pro Hac Vice*)
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: (415) 856-7000
Fax: (415) 856-7100

Ariell N. Bratton (*Pro Hac Vice*)
ariellbratton@paulhastings.com
Cole D. Malmberg (*Pro Hac Vice*)
colemalmberg@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Tel: (858) 458-3000
Fax: (858) 458-3005

Paige Arnette Amstutz
State Bar No.: 00796136
pamstutz@scottdoug.com
Steve McConnico
Texas Bar No. 13450300
smcconnico@scottdoug.com
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (512) 495-6300
Fax: (512) 495-6399

**ATTORNEYS FOR DEFENDANT GOOGLE LLC**

*/s/ J. Mark Mann*
J. Mark Mann
Texas Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
blake@themannfirm.com
MANN | TINDEL | THOMPSON
201 E. Howard Street
Henderson, TX 75654
Tel: (903) 657-8540
Fax: (903) 657-6003

Frank C. Cimino, Jr. (*Pro Hac Vice*)
FCCimino@Venable.com
Megan S. Woodworth (*Pro Hac Vice*)
MSWoodworth@Venable.com
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4569

William Hector (*Pro Hac Vice*)
WAHector@Venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
(415) 653-3750

**ATTORNEYS FOR DEFENDANTS VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,**

*/s/ Daniel T. Shvodian*
M. Craig Tyler
Texas Bar No. 00794762
CTyler@perkinscoie.com
PERKINS COIE LLP
500 W 2nd St, Suite 1900
Austin, TX 78701-4687
Tel: (737) 256-6113
Fax: (737) 256-6300

Daniel T. Shvodian (*Pro Hac Vice)*
dshvodian@perkinscoie.com
Christopher Kelley *(Pro Hac Vice)*
ckelley@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650.838.4300
Fax: 650.838.4350

**ATTORNEYS FOR DEFENDANTS AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; AND AMAZON WEB SERVICES, INC.**

**VERIZON SERVICES CORP., AND VERIZON BUSINESS NETWORK SERVICES LLC**

*/s/ Amanda Tessar*
Amanda Tessar (*Pro Hac Vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Tel: (303) 291-2357
Fax: (303) 291-2457

Martin E. Gilmore, (*Pro Hac Vice Pending*)
MGilmore@perkinscoie.com
PERKINS COIE LLP
500 W 2nd St 1900
Austin, Texas 78701
Tel: (737) 256-6100
Fax: (737) 256-6300

Melissa Richards Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM AND SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

**ATTORNEYS FOR DEFENDANT T-MOBILE USA, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 11, 2022, to all counsel of record who are deemed to have consented to electronic service via email. Due to the CM/ECF outage on March 11, 2022, the brief and corresponding exhibits are being filed on today's date of March 14, 2022.

*/s/ William A. Hector*

William Hector (*Pro Hac Vice*)
WAHector@Venable.com
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA 94111
(415) 653-3750

**ATTORNEY FOR DEFENDANTS VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON SERVICES CORP., AND VERIZON BUSINESS NETWORK SERVICES LLC**

# APPENDIX A: AGREED CLAIM CONSTRUCTIONS

| Term | Agreed Construction |
| --- | --- |
| "access server"<br><br>'234 patent, claims 1, 11, 19-21, 25, 28;<br>'721 patent, claims 1, 16, 20, 34, 38, 39, 46, 49, 50 | Plain and ordinary meaning |
| "routing controller"<br><br>'234 patent, claims 10, 19, 28, 32, 48, 62, 64;<br>'721 patent, claims 15, 16, 34, 49, 51, 77, 103, 109, 110, 124 | Plain and ordinary meaning |
| "means for receiving, from a user of the mobile telephone, a callee identifier"<br><br>'234 patent, claim 11 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: receiving, from a user of the mobile telephone, a callee identifier<br><br>Structure: a dialing input, which is a key pad, a voice recognition unit, or a parameter memory with prestored callee identifiers |
| "means for transmitting an access code request message to an access server"<br><br>'234 patent, claim 11;<br>'721 patent, claim 20 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: transmitting an access code request message to an access server<br><br>Structure: a network interface |
| "means for receiving an access code reply message from the access server in response to [said/the] access code request message"<br><br>'234 patent, claim 11;<br>'721 patent, claim 20 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: receiving an access code reply message from the access server in response to [said/the] access code request message<br><br>Structure: a network interface |
| "means for receiving from the mobile telephone [said/an] access code request message"<br><br>'234 patent, claims 19, 46 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: receiving from the mobile telephone [said/an] access code request message<br><br>Structure: a network interface |

| | |
|---|---|
| "means for transmitting [said/an/the] access code reply message including [said/the] access code to the [mobile telephone/wireless apparatus]"<br><br>'234 patent, claims 19, 46;<br>'721 patent, claims 34, 77 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: transmitting [said/an/the] access code reply message including [said/the] access code to the [mobile telephone/wireless apparatus]<br><br>Structure: a network interface |
| "means for receiving from a user of the wireless apparatus a destination node identifier"<br><br>'721 patent, claim 20 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: receiving from a user of the wireless apparatus a destination node identifier<br><br>Structure: a dialing input, which is a key pad, a voice recognition unit, or a parameter memory with prestored callee identifiers |
| "means for receiving from the wireless [apparatus/device] [the/an] access code request message"<br><br>'721 patent, claims 34, 77 | Governed by 35 U.S.C. § 112 ¶ 6<br><br>Function: receiving from the wireless [apparatus/device] [the/an] access code request message<br><br>Structure: a network interface |