**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| VOIP-PAL.COM, INC.<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., and WHATSAPP, INC.<br><br>Defendants. | CIVIL ACTION NO. 6:21-cv-665-ADA |
| VOIP-PAL.COM, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | CIVIL ACTION NO. 6:21-cv-667-ADA |
| VOIP-PAL.COM, INC.<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON.COM SERVICES LLC, and AMAZON WEB SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION NO. 6:21-cv-668-ADA |

| | |
|---|---|
| VOIP-PAL.COM, INC.<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC.,<br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br>VERIZON SERVICES, CORP., and<br>VERIZON BUSINESS NETWORK SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION NO. 6:21-cv-672-ADA |
| VOIP-PAL.COM, INC.<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE US, INC., and<br>T-MOBILE USA, INC.,<br><br>Defendants. | CIVIL ACTION NO. 6:21-cv-674-ADA |

**PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. LEGAL STANDARDS ..........................................................................................1

III. THE MOBILE GATEWAY PATENTS.................................................................3

A. Overview ........................................................................................................... 3

IV. ARGUMENT .........................................................................................................4

A. "roaming" ('234 patent claims 1, 19, 28, 30, 46, 62; '721 patent claims 34, 49) ........................................................................................................... 4

B. "callee identifier" ('234 patent claims 1, 11, 20, 25, 28, 30, 46, 62)...................... 7

C. "access code" ('234 patent claims 1, 10, 11, 19-21, 25, 28, 30-33, 38, 40, 43, 45-48, 54, 61, 62, 64, 65, 70, 72, 75; '721 patent claims 1, 14, 16, 20, 34, 38, 39, 46, 49-51, 57, 63, 77, 103, 104, 109, 110, 124, 130, 135, 138-40) ...... 9

D. "access code request message" ('234 claims 1, 10, 11, 19-21, 28, 30, 31, 40, 46, 47, 62, 72; '721 claims 1, 16, 20, 34, 38, 39, 49-51, 77, 103, 104, 135)........ 10

E. "pool of access codes" ('234 patent claims 1, 11, 20, 30, 38, 46, 54, 57, 62, 70; '721 patent claims 63, 109)............................................................... 11

F. "local call" ('234 patent, claims 1, 11, 20) ......................................................... 13

G. "means for initiating a call using said access code to identify the callee" ('234 patent claim 11)........................................................................... 15

H. "means for selecting said access code from a pool of access codes" ('234 patent claim 46)........................................................................................ 17

I. "gateway" ('721 patent, claims 1, 20, 38, 51, 77, 103, 133) ............................... 18

V. CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Asetek Holdings, Inc. v. Coolit Sys.*, No. C-12-4498 EMC, 2013 U.S. Dist. LEXIS 170488 (N.D. Cal. Dec. 3, 2013) ........ 10

*Atser Research Techs., Inc. v. Raba-Kistner Consultants, Inc.*, No. SA-07-CA-93-H, 2009 U.S. Dist. LEXIS 25294 (W.D. Tex. Mar. 2, 2009) ........ 10

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ........ 8

*Ferring B.V. v. Watson Labs.*, Inc., 3:11-cv-00481-RCJ-VPC, 2013 U.S. Dist. LEXIS 17536 (D. Nev. Feb. 6, 2013)........ 10

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008). ........ 17

*Hand Held Prods., Inc. v. Amazon.com, Inc.*, No. 12-768, 2014 U.S. Dist. LEXIS 85345 (D. Del. June 24, 2014) ........ 15

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014) ........ 2, 7

*Hyperion Solution Corp. v. Outlooksoft Corp.*, 422 F. Supp. 2d 760 (E.D. Tex. 2006)........ 9, 10

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000) ........ 5

*Interdigital Commuc'ns., Inc. v. ZTE Corp.*, 1:13-cv-00009-RG, 2014 U.S. Dist. LEXIS 113316 (D. Del. Aug. 8, 2014) ........ 10

*Kara Tech Inc. v. Stamps.com Inc.*, 582 F.3d 1341 (Fed. Cir. 2009) ........ 8, 12, 13

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)........ 2

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ........ 1

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ........ 2

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ........ 15

*Modine Mfg Co. v. US. Int 'l Trade Comm 'n,* 75 F.3d 1545 (Fed. Cir. 1996) ........ 3

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ............................................ 9

*Osram GmbHv. Int 'l Trade Comm'n,* 505 F.3d 1351 (Fed. Cir. 2007) ......................................... 3

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747 (Fed. Cir. 2016).... 6

*Renishaw PLC v. Marposs Societa 'per Azioni,* 158 F.3d 1243 (Fed. Cir. 1998)........................... 3

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) .................................................. 1, 2

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) ........................................ 5

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996)........................................... 2

# TABLE OF ABBREVIATIONS

| ABBREVIATION | TERM |
|---|---|
| VoIP-Pal | Defendant VoIP-Pal.com, Inc. |
| Facebook | Facebook, Inc. |
| WhatsApp | WhatsApp, Inc. |
| Google | Google LLC |
| Amazon | Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Web Services, Inc. |
| Verizon | Verizon Communications, Inc.,<br>Cellco Partnership D/B/A Verizon Wireless,<br>Verizon Services, Corp., and<br>Verizon Business Network Services, Inc. |
| T-Mobile | T-Mobile USA, Inc. |
| Defendants | Facebook, WhatsApp, Google, Amazon, Verizon, T-Mobile |
| The ’606 patent | U.S. Patent No. 10,218,606 |
| The ’234 patent | U.S. Patent No. 8,630,234 |
| The ’721 patent | U.S. Patent No. 10,880,721 |
| The Mobile Gateway patents or the patents-in-suit | The ’234 and ’721 patents |
| RBR | Routing, Billing, Rating |
| POSITA | Person of ordinary skill in the art |

## I. INTRODUCTION

Rather than cease their unlawful use of VoIP-Pal's intellectual property, Defendants attempt to misuse the claim construction process to invalidate the patents-in-suit and escape patent infringement liability. Most if not all of the disputed terms are plain English words that are readily understandable to a POSITA and to potential jurors. Defendants' proposed constructions, however, import improper and unnecessary limitations into the disputed claim terms. Their self-serving constructions seeks to limit the asserted claims to the preferred embodiment disclosed in the specification and in many instances violate basic claim construction principles. The motive behind Defendants' proposed constructions is clear—when properly construed, the asserted claims are valid over the prior art and Defendants' accused products literally infringe the patent-in-suit. VoIP-Pal's proposed constructions of the disputed claim terms, on the other hand, are consistent with the plain claim language and the intrinsic record. Accordingly, VoIP-Pal respectfully requests that the Court adopt its proposed constructions and reject Defendants' proposed constructions.

## II. LEGAL STANDARDS

Ultimately, the proper construction of a patent is a question of law.[1] "[T]he words of a claim are generally given their ordinary and customary meaning ... [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."[2] "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent."[3] The patent "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single

---

[1] *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)).
[2] *Id.* at 1312-13 (internal citations and quotation marks omitted).
[3] *Id.* at 1321 (internal quotation marks omitted).

best guide to the meaning of a disputed term."[4] While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered.[5] Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment ... [b]ecause claim terms are normally used consistently throughout the patent."[6]

"[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."[7] "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."[8] A court "should also consider the patent's prosecution history, if it is in evidence."[9]

"In some cases, ... the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period."[10] "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."[11]

---

[4] *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).
[5] *Phillips,* 415 F.3d at 1314.
[6] *Id.* (internal citation omitted).
[7] *Phillips,* 415 F.3d at 1316.
[8] *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).
[9] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).
[10] *Teva*, 135 S. Ct. at 841.
[11] *Markman*, 52 F.3d at 980.

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction,"[12] thus "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation."[13]

## III. THE MOBILE GATEWAY PATENTS

### A. Overview

The Mobile Gateway patent describe novel systems, apparatuses and methods for providing an access code to roaming mobile communication devices such as smartphones, to enable access to suitable communication routing infrastructure, wherein the selection of the communication channel for a call can be optimized based on the calling device's current location. An embodiment enabling a mobile device to initiate a call to a callee is shown in Figure 1 at 10.

In one embodiment, in response to a call being placed, a mobile device 12 transmits an access code request message including a location identifier to an access server 14 in communication with a routing controller ("RC") 30. The RC identifies a geographical area associated with the mobile device 12, generates an access code based on request message, including the location identifier, and causes an access code to be transmitted to the mobile device. The mobile device 12 uses the access code it received to initiate a call using a channel identified by the access code, which could be a phone number or IP address. For example, the mobile device 12 could initiate a call to a phone number 20-24 associated with a (PSTN-based) gateway 18 to reach the IP network 26. In some embodiments, the access code is not a PSTN phone number but could be an IP address such that an (IP-based) gateway (e.g., 18) could provide a channel or the

[12] *Renishaw PLC v. Marposs Societa 'per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998).
[13] *Osram GmbHv. Int 'l Trade Comm'n,* 505 F.3d 1351, 1358 (Fed. Cir. 2007) (quoting *Modine Mfg Co. v. US. Int 'l Trade Comm 'n,* 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

call could proceed via IP network 26.[14] Thus, the infrastructure used to connect the call is optimized to the location of the mobile device 12.

## IV. ARGUMENT

### A. "roaming" ('234 patent claims 1, 19, 28, 30, 46, 62; '721 patent claims 34, 49)

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Preamble is limiting. Plain and ordinary meaning of "roaming" is "being in another mobile telephone service provider's network and not the mobile telephone's home network" |

Defendants are deliberately imprecise as to which aspect of the preamble of these claims they assert are limiting. Claims 19, 28, 30, 46, and 62 of the '234 patent and claims 34 and 49 of the '721 patent are not directed to a mobile telephone or a wireless apparatus. Rather, they are directed to system or method for transmitting to and receiving communications from a such a device. For example, claim 19 of the '234 patent recites "*means for receiving from the mobile telephone* said access code request message," and "*means for transmitting* said access code reply message including said access code *to the mobile telephone*."[15] The preamble of these claim is limiting only to the extent that the claims require communication with a mobile telephone or a wireless apparatus, not that the claim in its entirety is limited to a mobile telephone or a wireless apparatus. Only claim 1 of the '234 patent is directed to a method where the steps are performed by a mobile telephone. Thus, the Court should only construe the preamble of claim 1 of the '234 patent as limiting the entirety of the claim to a mobile telephone.

---

[14] *See* Dkt. No. 41-3 9:9-47, 13:49-57, Figs. 1-8. All Dkt. Nos. refer to Case No. 6:21-cv-665-ADA unless otherwise indicated.
[15] Dkt. No. 41-2 at claim 19.

None of these claims, however, is limited by the preamble due the term "roaming." "Roaming" "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention" and therefore is not limiting.[16] Indeed, the term "roaming" does not appear anywhere in the body of these claims. Contrary to what Defendants' contend, claim 1 of the '234 patent, which recites "[a] method of roaming with a mobile telephone" is not representative of the other claims in this regard.[17] All the other asserted claims either recite a system or method for "*enabling roaming* by a mobile telephone (wireless apparatus)," or "*enabling* mobile telephone *roaming*."[18] The use of the term "enabling roaming" is significant because the claims provide an *alternative* to conventional roaming as discussed further below.

Defendants' contention that deleting the "initiating a call to a callee" language in the preamble of claim 1 of the '234 patent during prosecution constitutes a limiting disclaimer is erroneous.[19] Prosecution disclaimer requires a clear and unmistakable disavowal of scope during prosecution.[20] Defendants point to no evidence as to why the applicant amended the claims in this manner, nor to any evidence in the prosecution history that the applicant amended the preamble to overcome prior art. Instead, Defendants rely on the following passage from the specification as evidence of a disclaimer: "[m]obile telephone service providers often charge significant fees for long distance telephone calls, particularly when the mobile telephone is roaming in another mobile telephone service provider's network."[21] But the statement is merely a general description of the field of the invention and not a clear attempt to distinguish prior art.

---

[16] *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434-35 (Fed. Cir. 2000).
[17] Dkt. No. 41 at 3.
[18] Dkt. No. 41-2 at claims 19, 28, 30, 46, 62; Dkt. No. 41-3 at claims 34, 49.
[19] Dkt. No. 41 at 3.
[20] *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009).
[21] Dkt. No. 41 at 3; Dkt. No. 41-2 at 15-19.

Defendants' definition of "roaming" also misses the mark. Defendants define what the applicant referred to during prosecution as "conventional roaming"—engaging mobile telephone service provider other than the user's home service provider. Indeed, the evidence that Defendants cite in support of their construction use "roaming" in the conventional sense.[22] The intrinsic record, however, shows that the invention does not concern "roaming" in the conventional sense. Rather, the invention concerns using an access code to facilitate a form of "roaming" that avoids that charges incurred by placing call in another mobile telephone service provider's network:

> It will be appreciated that *use of the access code facilitates avoidance of long distance or roaming charges* that a mobile telephone service provider would charge for a call placed directly using the callee identifier *using conventional calling processes*, for example.[23]

The applicant expressly directed the Examiner to this portion of the specification during prosecution and distinguished "'roaming'" as used in the claims from "conventional roaming": :

> Furthermore, *the methods and systems claimed easily facilitate "roaming" of the mobile telephone … subscribers are bound to the same service provider, which avoids engaging other mobile telephone service providers directly with the subscriber as in conventional roaming* and avoids the associated loss of revenue by the home service provider.[24]

By adopting what they claim is the recognized understanding of roaming, Defendants fundamentally misunderstand the invention and effectively read the invention out of the claims.[25] The invention does not require the use of "conventional calling processes" nor conventional roaming in other service providers' networks.[26]

[22] Dkt. No. 41 at 4.
[23] Dkt. No. 41-2 at 13:4-9.
[24] Dkt. No. 41-4 at 36 (emphasis added).
[25] *See PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 755 (Fed. Cir. 2016) ("a construction which excludes the preferred embodiment is rarely, if ever correct.").
[26] *See, e.g.*, Dkt. No. 41-3 at 13:13-17.

Although "roaming" may have a recognized meaning outside the patents, the plain and ordinary use of the term in the patents is different and readily understandable as denoting an *alternative* to conventional roaming. Notwithstanding, to avoid any confusion, VoIP-Pal proposes that "roaming" alternatively be construed, in the context of these claims, to simply mean "use [of a communication device] over a geographical area."

**B. "callee identifier" ('234 patent claims 1, 11, 20, 25, 28, 30, 46, 62)**

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | telephone number, and not a username |

The meaning of term "callee identifier" is self-explanatory and does not require any further construction beyond the plain and ordinary meaning of the words as used in the claims. Even Google agrees.[27] Yet the other Defendants propose to limit the claims to a single embodiment by construing "callee identifier" to be "a telephone number and not a username." This construction violates basic claim construction principles. As noted above, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."[28] No such evidence of a clear intent to limit the claims to a single embodiment exists in the intrinsic record.

Contrary to what Defendants claim, the applicant did not repeatedly define the callee identifier as a "number" through the use of "i.e." during prosecution.[29] Defendants rely on only one portion of one statement from one response to an office action where the applicant allegedly defined the callee identifier as a "number," not repeated statements. The complete statement reads:

[27] Dkt. No. 41 at 5 n.6.
[28] *Hill-Rom*, 755 F.3d at 1372.
[29] Dkt. No. 41 at 5.

"[t]he Examiner indicates Elliott describes at paragraph 738 the callee identifier (i.e., dialed number) is stored in table entry, table 14."[30] But this statement merely repeats, almost verbatim, *the Examiner's* contention that the dialed number referred to in paragraph 738 of Elliott discloses the claimed callee identifier and is not an attempt by the applicant to define the callee identifier.[31]

Defendants' claim that the specification contains a disavowal of claim scope is incorrect. The language cited by Defendants makes clear that the specification merely describes a telephone number in one embodiment of the invention, not that it limits the scope of the invention:

> *In alternative embodiments* … an additional block … may determine whether the callee identifier is a valid username. However, *in the embodiment disclosed herein*, the callee identifier is assumed to be a telephone number of the callee, and not a username.[32]

In fact, the specification discloses, and also incorporates by reference, multiple alternative embodiments and expressly states that the disclosed embodiments are not intended to be limiting.[33] The Federal Circuit has repeatedly held that "it is improper to read limitations from a preferred embodiment described in the specification."[34] In any event, Defendants' proposed construction contradicts the specification's repeated, express disclosures that the "callee identifier" may include the callee's *username* (*see* Dkt. No. 41-2 at 27:14-17, 60-62, 32:47-51, Fig. 18B (404)).

Finally, Defendants point to no language in the claims that limits a callee identifier to a telephone number. Thus, the Court also should reject Defendants' proposed construction because

---

[30] Dkt. No. 41-4 at 32.

[31] Ex. 1 at 25; Ex. 2 at ¶738.

[32] Dkt. No. 41-2 at 29:61-67; *see also id.* 8:36-37, incorporating WO 2008/052340's embodiments.

[33] Dkt. No. 41-2 at 34:30-33; *see also id.* at 9:1-5, 9:13-17, 15:3-6, 19:6-12, 22:30-32, 22:45-48, 22:56-61.

[34] *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012); *see also Kara Tech Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

it seeks to import a negative limitation into the claims, which is inappropriate especially when it is not supported by the claim language.[35]

### C. "access code" ('234 patent claims 1, 10, 11, 19-21, 25, 28, 30-33, 38, 40, 43, 45-48, 54, 61, 62, 64, 65, 70, 72, 75; '721 patent claims 1, 14, 16, 20, 34, 38, 39, 46, 49-51, 57, 63, 77, 103, 104, 109, 110, 124, 130, 135, 138-40)

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "code used by the [mobile telephone / wireless device / wireless apparatus] in place of the callee identifier" |

The term "access code" also is self-explanatory and does not require any further construction beyond the plain and ordinary meaning of the words as used in the claims. Defendants appear to agree, at least in part, because they do not dispute that an "access code" is a "code." The dispute, however, concerns the portion of Defendants' construction that requires that the access code be used "in place of the callee identifier." This portion of Defendants' construction injects unnecessary ambiguity into the claims and should be rejected.

Defendants' construction is problematic because it seeks to define "access code" by how it is used rather than what it is—an access code. Under Defendants' construction, if the access code is not used in place of the callee identifier, then is it is no longer an access code, which makes no sense. Moreover, there is no need to distinguish an access code from a callee identifier in the definition of "access code." The plain claim language of each asserted claims of the '234 patent already expressly recites "an access code being different from said callee identifier" or "said access

[35] *See, e.g., Hyperion Solution Corp. v. Outlooksoft Corp.*, 422 F. Supp. 2d 760, 773 (E.D. Tex. 2006) ("Importing a negative limitation into a claim, particularly where the claim language does not contain such a limitation, is generally not favored.") (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1329, 1332–33, 1335 (Fed. Cir. 2003)).

code being different from the callee identifier." Thus, the use "in place of the callee identifier" in Defendants' construction is redundant and unnecessary.[36]

Defendants' proposed construction is even more problematic with respect to the '721 patent because none of the asserted '721 claims recite a callee identifier. As such, Defendants' proposed construction injects further uncertainty into these claims. Although independent claims 1, 20, 38, and 50 of the '721 patent and their corresponding dependent claims recite "the access code being distinct from the destination node identifier," claims 77, 103 and 130 and their corresponding dependent claims do not. Thus, as to these claims, Defendants' proposed construction imports an improper negative limitation that finds no support in the claim language.[37]

Finally, Defendants' reliance on a Federal telecommunications standard in support of the alleged plain meaning of access code is irrelevant.[38] The parties' dispute does not concern the plain meaning of "access code," but rather, Defendants' attempt to incorporate an unnecessary and improper *usage* limitation into the construction of "access code," which should be rejected.

**D. "access code request message" ('234 claims 1, 10, 11, 19-21, 28, 30, 31, 40, 46, 47, 62, 72; '721 claims 1, 16, 20, 34, 38, 39, 49-51, 77, 103, 104, 135)**

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "message sent from the [mobile device / wireless device / wireless apparatus] and received by the access server" |

**"access code reply message" ('234 claims 1, 10, 11, 19, 20, 25, 28, 30, 43, 45, 46, 61, 62, 75; '721 claims 1, 16, 20, 34, 38, 46, 49-51, 77, 103, 124, 135, 138-40)**

---

[36] *See Interdigital Commuc'ns., Inc. v. ZTE Corp.*, 1:13-cv-00009-RG, 2014 U.S. Dist. LEXIS 113316, at *6 (D. Del. Aug. 8, 2014); *Asetek Holdings, Inc. v. Coolit Sys.*, No. C-12-4498 EMC, 2013 U.S. Dist. LEXIS 170488, at *13 (N.D. Cal. Dec. 3, 2013); *Ferring B.V. v. Watson Labs.*, Inc., 3:11-cv-00481-RCJ-VPC, 2013 U.S. Dist. LEXIS 17536, at *22 (D. Nev. Feb. 6, 2013); *Atser Research Techs., Inc. v. Raba-Kistner Consultants, Inc.*, No. SA-07-CA-93-H, 2009 U.S. Dist. LEXIS 25294, at *31-32 (W.D. Tex. Mar. 2, 2009).
[37] *See, e.g., Hyperion Solution*, 422 F. Supp. 2d at 773.
[38] Dkt. No. 41 at 7-8.

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "message sent from the access server and received by the [mobile device / wireless device / wireless apparatus]" |

Although VoIP-Pal initially identified these terms in Proposed Claim Terms for Construction, VoIP-Pal advised Defendants during the subsequent meet and confer process that these terms could be dropped. Nevertheless, some Defendants are unwilling to agree that these terms should be understood according to their plain and ordinary usage in the claims and have maintained a proposed construction for these terms. Yet, their proposed construction does not define what an "access code request message" or an "access code reply message" is. Rather, the construction seeks to define these terms by the identity of the sender and the recipient of the message. But these constraints place artificial and redundant limitation on the claims that are unwarranted. Contrary to what Defendants claim, VoIP-Pal does not contend that the sender and the recipient can be some unspecified device.[39] The plain claim language identifies what sends the access code request message and what receives the access code reply message. Despite their quibbling, Defendants fail to specify which claims where that is not the case. Accordingly, the plain claim language should control.

**E. "pool of access codes" ('234 patent claims 1, 11, 20, 30, 38, 46, 54, 57, 62, 70; '721 patent claims 63, 109)**

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | table containing access codes for exclusive association with a [callee identifier / destination node identifier] |

[39] Dkt. No. 41 at 10.

The term "pool of access codes" is self-explanatory and does not require any further construction beyond the plain and ordinary meaning of the words as used in the claims. This term merely adds two plain English words—"pool of"—to the term "access code." "Pool of" in this context is synonymous with "set of." Yet all the Defendants, except Google, believe that these two readily understandable words necessitate 12 additional words of definition. These additional limitations are both improper and unnecessary.

First, Defendants' contention that "pool of access codes" requires a "table" improperly imports limitations from the specification into the claims.[40] Although the specification discloses that access codes may be stored in access code association table 170, this table is merely illustrative. Indeed, the specification repeatedly refers to the access code association table as exemplary.[41] Moreover, the specification expressly states that other data structures may be used.[42] Conversely, Defendants cite no evidence that the term "pool of access codes" requires a table. Thus, the "table" requirement of Defendants' proposed construction should be rejected

Second, Defendants' contention that "pool of access codes" requires "access codes for exclusive association" adds unnecessary ambiguity to the claims and also improperly imports limitations from the specification. None of the claims recite an "exclusive association" between an access code and a callee identifier or destination node identifier. Rather, all the asserted claims except for claim 109 of the '721 patent already recite a correspondence between "each access code in said pool of access codes" and a "respective telephone number" or "Internet Protocol (IP) network address."[43] Claim 109 of the '721 patent requires that the access code identify a

[40] *See Kara Tech*, 582 F.3d at 1348.
[41] Dkt. No. 41-2 at 17:43-44, 18:28, 18:38, 23:66-67 (all referring to "exemplary access code association table 170").
[42] *Id.* at 19:4-12.
[43] *Id.* at claims 1, 11, 20, 30, 38, 46, 54, 57, 62, 70; Dkt. No. 41-3 at claim 63.

communications channel but not a telephone number.[44] Defendants' proposed construction adds nothing to clarify the ordinary meaning of the plain language. If anything, it muddles the meaning.

Defendants argue that access code association table 170 provides fields for associating an access code with a single callee identifier and that the algorithm for assigning access codes (process 270) ensures that an access code is associated with a single callee identifier.[45] But the specification expressly states that these embodiments are not limiting:

> Therefore, the access code association table (170) and the process 270 illustrated in FIG. 12 are examples only, and one of ordinary skill in the art will readily appreciate numerous alternative data structures and algorithms.[46]

Thus, Defendants' proposed construction is nothing more than a blatant attempt to limit the claims to a specific implementation or preferred embodiment and should be rejected.[47]

**F. "local call" ('234 patent, claims 1, 11, 20)**

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A call that is made in a geographical area associated with the caller's device | Plain and ordinary meaning, which is "call within the PSTN local calling area of the mobile telephone" |

The dispute between the parties is whether the term "local call" is limited to calls made within the PSTN local calling area of the caller's device. During the meet and confer process, VoIP-Pal amended its proposed construction to make clear that term "local call" as used in the patents-in-suit is not so limited.

Defendants admit that the specification provides an explicit definition of local calling area that is not limited to a PSTN local calling area.[48] It reads:

---

[44] *Id.* at claims 103, 109.
[45] Dkt. No. 41 at 11-12.
[46] Dkt. No. 41-2 at 22:56-61.
[47] *See Kara Tech*, 582 F.3d at 1348.
[48] Dkt. No. 41 at 13.

> [A] set of telephone numbers, typically defined by a geographical region, to which telephone calls may be placed by callers within the local calling area at either no additional charge or at a lower additional charge than would be required for calls to numbers that are outside of the local calling area.[49]

Defendants, however, misread the portions of the specification surrounding this definition in asserting that "a local calling area" applies only to PSTN communications. First, the specification describe embodiments in which the communication channels are associated with PSTN telephone numbers in a local calling area:

> The channels 20, 22, and 24 maybe associated with PSTN telephone numbers in a local calling area associated with the mobile telephone 12, and thus these channels preferably depend on a geographical location of the mobile telephone.[50]

The specification next defines "local calling area" as noted above. Then, immediately after that definition, the specification describes an embodiment in which that the local calling area includes non-PSTN communication channels:

> [I]n other embodiments, the gateway 18 may be in communication with any number of channels, which need not be PSTN telephone lines.[51]

In other words, the specification expressly contemplates that non-PSTN telephone lines may be in the local calling area associated with the mobile telephone 12. Thus, Defendants' claim that the specification does not discuss non-PSTN networks with reference to a "local calling area" is plainly incorrect.

While a PSTN based definition of "local calling area" could be used "if the access code is a PSTN telephone number" (18:36-43) the specification also intends to cover non-PSTN embodiments. It emphasizes, again, at 18:44-53 that "access codes" need not be limited to being "PSTN telephone numbers," which "*need not be limited to particular geographic [PSTN] areas*."

---

[49] Dkt. No. 41-2 at 9:28-34.
[50] Dkt. No. 41-2 at 9:24-28.
[51] *Id.* at 9:34-37.

A "local call" may be based on a geographical location of the mobile phone, for example, as derived from an IP address of the device, for example, its location in an IP network (17:9-14 and 19-30); or it could use a location based on a cell network (17:11-12); or be based on a "user-configured identifier" (17:14, 12:45) that merely predicts where the user "may" be situated (12:40-42) or is "likely" to be associated with the phone (17:16). It could be a "default" area that may or may not correspond to a PSTN area (16:37-43), or it could just be "approximate" (12:56-59).

Defendants' argument that applying the term local call outside the context of a PSTN would render the claims indefinite lacks merit.[52] As not above, the specification defines "local calling area" without limiting it to a PSTN local calling area. In addition, Defendants cannot establish that the patents-in-suit fail to inform a POSITA of the bounds of the claims by clear and convincing evidence relying solely on attorney argument.[53] Attorney argument is not evidence. Without extrinsic evidence support, Defendants have no basis to argue that VoIP-Pal's construction would render the term local call indefinite. Because VoIP-Pal's proposed construction is the proper construction, it should be adopted.[54]

### G. "means for initiating a call … " ('234 patent claim 11)

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| **Function:** initiating a call using said access code to identify the callee.<br><br>**Structure:** Mobile wireless device 12 having a microprocessor 52 programmed to implement the algorithm illustrated in FIG. 3, which includes block 149 labeled "Initiate voice/video call using access code." The wireless device 12 includes I/O port(s) 56 | **Function:** initiating a call using said access code to identify the callee<br><br>**Structure:** a network interface, including switched line channels in a public switched telephone network (PSTN) |

[52] Dkt. No. 41 at 14.
[53] *See Hand Held Prods., Inc. v. Amazon.com, Inc.*, No. 12-768, 2014 U.S. Dist. LEXIS 85345, at *14-15, 48-49 (D. Del. June 24, 2014) (citing Amazon's lack of expert testimony in rejecting Amazon's indefiniteness arguments).
[54] *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011).

| | |
|---|---|
| capable of acting as an interface to external networks (70, 72, 15, 16). See FIG. 2. | |

The dispute between the parties concerns only the proper corresponding structure for this term, which the parties agree is a means-plus-function limitation subject to 35 U.S.C. §112(f). Defendants erroneously contends that VoIP-Pal only identifies a generic microprocessor and item 149 of Figure 3 as the corresponding structure.[55] VoIP-Pal also identifies mobile wireless device 12 and I/O ports 56. Defendants do not address either of these structural elements. Indeed, with respect to I/O ports 56, there should not be a significant dispute between the parties because VoIP-Pal's proposed construction provides that the I/O ports 56 are capable of acting as an interface to external networks and Defendants claim that the corresponding structure is a network interface.

To the extent that Defendants contend that microprocessor 52 is not part of the corresponding structure, Defendants are mistaken. The specification expressly states that microprocessor 52 initiates a call:

> [B]lock 149 directs the microprocessor 52 to initiate a call with the mobile telephone (12) on the mobile telephone network 15 (illustrated in FIG. 1) using the access code received in the access code field 142 of the access code reply message 140 (shown in FIG. 5) to identify the callee.[56]

Defendants concede as much.[57] Microprocessor 52 is the only structure identified in the specification that initiates a call and therefore must be part of the corresponding structure.

Defendants' argument that microprocessor 52 does not provide adequate corresponding structure is incorrect for several reasons. First, at noted above, microprocessor 52 is not the only structure that VoIP-Pal identifies. VoIP-Pal also identifies I/O ports 56, which are effectively the same structure as the network interface that Defendant identify. Thus, from that standpoint, VoIP-

[55] Dkt. No. 41 at 16.
[56] Dkt. No. 41-2 at 13:29-39.
[57] Dkt. No. 41 at 15.

Pal has identified sufficient corresponding structure. Second, contrary to what Defendants claim, the specification discloses a corresponding algorithm for microprocessor 52 as the flow chart in Figure 3. The Federal Circuit permits the algorithm to be a flow chart.[58] Moreover, the proper inquiry is whether a POSITA would have understood the specification to encompass software to perform the initiating a call function and have been able to implement such a program.[59] In this case, the specification expressly states how the initiating function may be implemented using any suitable programming language, such as Java, C, and/or C++ to be responsive to receiving an access code.[60] Thus, the specification provide a POSITA the requisite understanding.

**H. "means for selecting said access code … " ('234 patent claim 46)**

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| **Function**: selecting said access code from a pool of access codes<br><br>**Structure**: Access server 14 and/or a routing controller 30 having a microprocessor (152 or 232) programmed to implement the algorithm illustrated in FIG. 7 including step 196, FIG. 12 and/or disclosed alternative embodiments or equivalents thereof. Various embodiments of a routing controller producing an access code are disclosed at col. 15, line 7 to col. 22 line 60, for example. In some embodiments, the routing controller is part of or integrated with the access server; see col. 17 lines 19-30. | **Function**: selecting said access code from a pool of access codes<br><br>**Structure**: a processor (of the routing controller), a memory storing table memory in a form given in FIG. 10, a temporary memory containing a local calling area identifier and an access code store, and a clock for selecting an access code from a pool of access codes using the algorithm given in FIG. 12 |

The dispute between the parties concerns only the proper corresponding structure for this term, which the parties agree is a means-plus-function limitation subject to 35 U.S.C. §112(f). Defendants point to the routing controller (30) as the only hardware and to Figure 12 as the entirety of the algorithm disclosed, failing to recognize alternative embodiments that are disclosed.

[58] *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).
[59] *Id.*
[60] Dkt. No. 41-2 at 11:30-33, 13:1-4 and 21-58.

Defendants erroneously contends that VoIP-Pal only identifies block 196 in Figure 7 labeled "Obtain an access code."[61] But VoIP-Pal identifies the entirety of Figure 7. Block 196, however, is the step that initiates the process of selecting an access code by transmitting an access code request message 10 to a routing controller to cause it to select a suitable access code.[62] In some embodiments, the routing controller is part of or integrated with the access server, thus the access server may itself select a suitable access code.[63] One method of selecting an access code is described in Figure 12.[64] But the specification makes clear that in alternative embodiments, one or more blocks in Figure 12 may be omitted when generating an access code.[65] Contrary to Defendants' view, Figure 10 is only one structure for storing access codes as the specification states alternate algorithms and data structures may be used to search a pool of access codes.[66] For example, instead of Figure 10, access codes can be integrated with other databases that identify channels such as a Direct-Inward-Dial database of phone numbers; and, in embodiments that identify IP addresses as channels, the access code could be integrated into an IP address database.[67]

### I. "gateway" ('721 patent, claims 1, 20, 38, 51, 77, 103, 133)

| VoIP-Pal's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning, which is "device that connects networks that use different communication protocols" |

VoIP-Pal submits that the plain and ordinary meaning of "gateway" is that of a device that connects network. VoIP-Pal denies the Defendants' assertion that the networks must *necessarily* "use different communication protocols." Defendants try to prove their case from cherry-picked

[61] Dkt. No. 41 at 18.
[62] Dkt. No. 41-2 at 14:38-43 and 15:28-32.
[63] Dkt. No. 41-2 at 17:19-30 and 15:9-16.
[64] Dkt. No. 41-2 at 16:7-11.
[65] Dkt. No. 41-2 at 22:46-52, 31:46-51.
[66] Dkt. No. 41-2 at 22:53-23:10.
[67] Dkt. No. 41-2 at 19:20-20:39, 31:2-10; and *compare* 13:49-67, 34:64-67.

dictionaries and prior art references, but their evidence is inconclusive. Their first dictionary citation states that the gateway transfers and converts information into a "form compatible with the protocols used by the receiving network" but this definition does not require the receiving network to always use a different protocol.[68] Defendants' other dictionary states that a gateway "can" adjust "protocols and timing," not that it "must."[69] Indeed, Defendants do not try to argue that a gateway *necessarily* connects networks that "use different *timing*." And while this definition assumes that the networks are "dissimilar", it stops short of saying that all gateways *only* connect networks that are "dissimilar," (or that have different "timing"). Defendants cannot prove that all "gateways" must always connect only networks that use *different* protocols. A POSITA would know many reasons for using a gateway other than for switching protocols, including for access control, security (e.g., VPN), or network address translation in some embodiments, for example.[70]

Defendants cite to a stray phrase in prior art reviewed by the Patent Office (WO 01/89145 ("Foti"), Dkt. No. 41-11) as allegedly showing that gateways bridge different protocols, but Foti at best provides a *particular example* of a gateway, used in a particular context ("[f]or IP calls that originate in a circuit-switched network"). But VoIP-Pal can cite counterexamples of "gateways" in prior art reviewed by the Patent Office which use the *same* protocol on both sides of the "gateway."[71] Thus, a "gateway" need not always switch between different protocols. Even if a gateway stood between an IP network and a PSTN, any translation to PSTN protocols (e.g., TDM, SS7) might occur downstream of the gateway—it would not need to be *part of* the gateway itself.

Even the Defendants' citation of the application that led to the '721 patent backfires.[72] Even if the '721 patent disclosed an *example* of a gateway 18 which bridged different protocols (*i.e.*, PSTN-protocol to IP-protocol), that would not be dispositive of the full scope of meaning of

---

[68] Dkt. No. 41-9 at DEFS-VOIP-2021-CC-00000064.
[69] Dkt. No. 41-10 at DEFS-VOIP-2021-CC-00000087.
[70] Dkt. No. 41-2 at 24:34-67; see also Ex. 3 at 13:12 to 14:35 (different uses for gateways).
[71] *See, e.g.*, Ex. 3 at FIG. 14 (disclosing gateway 1402, which uses IP protocol on both sides); *see also*, *id*., at 4:13-23, 14:1-21 ("gateway" forwards packets "without conversion to TDM first").
[72] *See* Case No. 6:20-cv-269-ADA, Dkt. No. 67 at 16.

the term "gateway." But the '721 patent expressly discloses that the communication channels provided by the gateway 18 "need not be PSTN telephone lines."[73] And "if the mobile telephone is capable of voice over IP communications, the access code may be used to identify an IP address in the IP network."[74] Defendants attempt to emphasize that in FIG. 1, the '721 patent discloses "*a VoIP telephone 36 that is directly in communication with the IP network 26*," bypassing gateway 18).[75] But the '721 patent suggests that, in some embodiments, even IP telephone 36 could communicate through an IP-to-IP gateway—a fact that Defendants have overlooked: "[t]he I/O port 326 further includes a SIP output 338 for transmitting messages to the *gateway* (18 and/or 34) *or VoIP telephone (36, for example)* to advise the gateway 18 and/or 34 *or IP telephone* of the IP addresses of the *gateways* which will establish the audio/video path."[76] This sentence indicates that even the VoIP telephone 36 may require the "IP addresses of the *gateways* which will establish the audio/video path."[77] The '721 patent thus entirely refutes the Defendants' argument.

The plain and ordinary meaning of "gateway" is "a device that connects at least two networks," but there is no requirement that the two networks necessarily have a different protocol.

## V. CONCLUSION

In conclusion, VoIP-Pal respectfully requests that the Court adopt VoIP-Pal's claim constructions and reject Defendants' proposed constructions.

---

73 *See* Dkt. No. 41-3 at 9:37-40.
74 *Id.* at 13:62-67.
75 *Id.* at 16-17.
76 Dkt. No. 41-3 at 25:36-40 (referring to the call controller in FIG. 15) (emphasis added).
77 *Id.*

Dated: April 8, 2022

*/s/ Lewis E. Hudnell, III*
HUDNELL LAW GROUP P.C.
Lewis E. Hudnell, III
lewis@hudnelllaw.com
Nicolas S. Gikkas
800 W. El Camino Real Suite 180
Mountain View, California 94040
T: 650.564.3698
F: 347.772.3034

**ATTORNEYS FOR PLAINTIFF**
**VOIP-PAL.COM, INC.**

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Lewis E. Hudnell, III*
Lewis E. Hudnell, III