# Exhibit B

***** *****—1—

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS
2                     WACO DIVISION

3   VOIP-PAL.COM, INC.        *
                              *      March 5, 2025
4   VS.                       *
                              *
5   VERIZON COMMUNICATIONS,  * CIVIL ACTION NO. 6:21-CV-672
      INC., ET AL.            *
6                             *
    T-MOBILE USA, INC.        * CIVIL ACTION NO. 6:21-CV-674
7
8         BEFORE THE HONORABLE ALAN D ALBRIGHT
              MOTIONS HEARING (Via Zoom)

9   APPEARANCES:

10  For the Plaintiff:   Lewis E. Hudnell III, Esq.
                         Hudnell Law Group P.C.
11                       800 W. El Camino Real, Suite 180
                         Mountain View, CA 94040
12
                         Stanley H. Thompson, Jr., Esq.
13                       Hudnell Law Group P.C.
                         17595 Harvard Ave., Ste C-810
14                       Irvine, CA 92614

15                       Nicolas Spiros Gikkas, Esq.
                         The Gikkas Law Firm, PC
16                       530 Lytton Avenue, 2nd Floor
                         Palo Alto, CA 94301
17
                         Mark Siegmund, Esq.
18                       William D. Ellerman, Esq.
                         Cherry Johnson Siegmund James, PLLC
19                       The Roosevelt Tower
                         400 Austin Avenue, 9th Floor
20                       Waco, Texas 76701

21
    For Defendant Verizon:
22
                         Frank C. Cimino, Jr., Esq.
23                       Megan S. Woodworth, Esq.
                         Venable LLP
24                       600 Massachusetts Ave., NW
                         Washington, DC 20001
25

*****  ██████████████████████  *****—2—

1                            William A. Hector, Esq.
                             Venable LLP
2                            101 California Street, Suite 3800
                            San Francisco, CA 94111
3
    For Defendant T-Mobile:
4
                            Amanda Tessar, Esq.
5                            Kourtney Mueller Merrill, Esq.
                            Perkins Coie LLP
6                            1900 Sixteenth Street, Suite 1400
                            Denver, CO 80202
7
                            Karl Johnston, Esq.
8                            Perkins Coie LLP
                            505 Howard Street, Suite 1000
9                            San Francisco, CA 94105

10                        James Travis Underwood, Esq.
                            Gillam & Smith
11                          102 N. College, Suite 800
                            Tyler, TX 75702
12
    Court Reporter:     Kristie M. Davis, CRR, RMR
13                        PO Box 20994
                            Waco, Texas 76702-0994
14                        (254) 340-6114

15        Proceedings recorded by mechanical stenography,

16   transcript produced by computer-aided transcription.

17

18

19

20

21

22

23

24

25

***** ▮▮▮▮▮ *****—3—

| 09:30 | 1 | (Hearing begins.) |
| 09:30 | 2 | DEPUTY CLERK: A civil action in Case |
| 09:30 | 3 | 6:21-CV-672, VoIP-Pal.com, Incorporated, versus Verizon |
| 09:31 | 4 | Communications, Incorporated, et al. Case called for a |
| 09:31 | 5 | motions hearing. |
| 09:31 | 6 | THE COURT: Announcements from counsel, |
| 09:31 | 7 | please. |
| 09:31 | 8 | MR. SIEGMUND: Good morning, Your Honor. |
| 09:31 | 9 | Mark Siegmund on behalf of plaintiff VoIP-Pal, Inc. |
| 09:31 | 10 | With me this morning is Lewis Hudnell, Nick Gikkas, |
| 09:31 | 11 | Stan Thompson, and my partner Will Ellerman. And we |
| 09:31 | 12 | are ready to proceed. |
| 09:31 | 13 | MS. WOODWORTH: And good morning, Your |
| 09:31 | 14 | Honor. This is Megan Woodworth of the Venable law firm |
| 09:31 | 15 | on behalf of the Verizon defendants. With me are my |
| 09:31 | 16 | partners Frank Cimino and Bill Hector, and I believe |
| 09:31 | 17 | that Mike Holden, vice president and general counsel of |
| 09:31 | 18 | Verizon, will be joining us shortly. |
| 09:31 | 19 | THE COURT: And just to make sure I'm |
| 09:31 | 20 | straight, I chatted with my clerk. You all are in the |
| 09:31 | 21 | 9:30 hearing, correct? |
| 09:31 | 22 | MS. WOODWORTH: That's correct. |
| 09:31 | 23 | THE COURT: Got it. And folks that I'm |
| 09:31 | 24 | going to take up next are also going to be on this |
| 09:32 | 25 | call, correct? |

*****     *****—4—

```
09:32    1              MS. TESSAR:  That's correct.  This is
09:32    2   Amanda Tessar from Perkins Coie on behalf of T-Mobile.
09:32    3   Also on the line is Sarah Kalemeris and John Putnam who
09:32    4   are T-Mobile in-house lawyers.
09:32    5              And our understanding is that we are
09:32    6   here -- this is Verizon's hearing, but we are here for
09:32    7   the beginning part when the merits of the motion will
09:32    8   be discussed.  And then when you get into confidential
09:32    9   Verizon fee arrangement information, we'll drop off and
09:32   10   then they won't be on during our hearing when we
09:32   11   discuss that same type of confidential T-Mobile
09:32   12   information.
09:32   13              THE COURT:  Okay.  Very good.  I was just
09:32   14   trying to figure out whether to move straight into you
09:32   15   all's hearing next after that, but it looks like it
09:32   16   would be best to keep y'all at 10:30 -- an even 10:30
09:32   17   start time just so we all know when to be here.
09:32   18              So let's plan on that, but I'm happy to
09:32   19   take up the motion in the what I'll call the 9:30
09:33   20   hearing.
09:33   21              MS. KALEMERIS:  May I make one
09:33   22   clarification, Your Honor?
09:33   23              THE COURT:  Of course.
        24              MS. KALEMERIS:  This is Sarah Kalemeris
09:33   25   for T-Mobile.  I'm actually at a mediation with Mike
```

***** ████████████████████████ *****—5—

09:33   1    Holden for Verizon, and he is in the room with me.

09:33   2    When you get to Verizon's specific things, I will leave

09:33   3    but it will show my name is still here.

09:33   4                    THE COURT:  Okay.  Thank you for letting

09:33   5    me know.

09:33   6                    MS. TESSAR:  Just as kind of a

09:33   7    housekeeping matter, I'm assuming that you probably

09:33   8    don't want to hit the merits issues that overlap

09:33   9    between the two cases twice.  And so if there is

09:33   10   something --

09:33   11                   THE COURT:  Oh, no.  I like doing things

09:33   12   twice.

09:33   13                   MS. TESSAR:  Okay.

09:33   14                   (Laughter.)

09:33   15                   THE COURT:  No, no.  I'm kidding.  I do

09:33   16   not want to do them twice.

09:33   17                   MS. TESSAR:  Perfect.  So then I will

09:33   18   plan to be quiet and let Verizon have the lead.  But if

09:33   19   there's anything on the merits for T-Mobile that we

09:33   20   need to address, I will pipe in now rather than

09:33   21   waiting.

09:33   22                   THE COURT:  That would be great.  I'm

09:33   23   fine with that.  Okay.

09:33   24                   MR. HUDNELL:  And, Your Honor?

09:33   25                   THE COURT:  Yes, sir, Mr. Hudnell.

09:33  1              MR. HUDNELL:  This is Lewis Hudnell.  We

09:33  2   weren't aware that the client representatives were

09:34  3   going to be attending today for the defendants.  I

09:34  4   think it's okay because I don't think we're covering

09:34  5   any VoIP-Pal confidential information.  It may come up,

09:34  6   but I just wanted to flag that in case it does come up

09:34  7   and that they may need to --

09:34  8              THE COURT:  No.  If at any time -- this

09:34  9   is for everyone.  If at any time something comes up

09:34  10  where clients shouldn't be involved, or in this case

09:34  11  the other defendants shouldn't be involved, whatever,

09:34  12  you all just let me know and we'll immediately take

09:34  13  care of that.

09:34  14             So that's -- thank you for letting me

09:34  15  know that, and I'm grateful for the defense clients

09:34  16  showing up.  I think it's good for them to hear this.

09:34  17  But if there's anything sensitive to the plaintiff, let

09:34  18  me know and they'll drop off.

09:34  19             MR. HUDNELL:  Thank you, Your Honor.

09:34  20             THE COURT:  Sure.

09:34  21             Anything else we need to take up before

09:34  22  we move to the merits?

09:34  23             Okay.  Someone should probably start now.

09:35  24             MS. WOODWORTH:  All right.  This is on

09:35  25  behalf of Verizon, and it is our motion for attorneys'

\*\*\*\*\*                                  \*\*\*\*\*—7—

| | |
|---|---|
| 09:35 | 1 | fees at the 9:30 hearing.  So Megan Woodworth again |
| 09:35 | 2 | from Venable on behalf of the Verizon defendants. |
| 09:35 | 3 | So the issue is attorneys' fees.  The |
| 09:35 | 4 | standard, as the Court is aware, comes from Octane |
| 09:35 | 5 | Fitness, which asks whether it is an exceptional case. |
| 09:35 | 6 | THE COURT:  I don't need the background. |
| 09:35 | 7 | MS. WOODWORTH:  Okay.  The exceptionality |
| 09:35 | 8 | is with respect to either the merits of the case or the |
| 09:35 | 9 | way that it's litigated.  And here we have both of |
| 09:35 | 10 | those in spades as supporting attorneys' fees. |
| 09:35 | 11 | We also have another really important |
| 09:35 | 12 | Hallmark that comes out of attorneys' fee cases, which |
| 09:35 | 13 | is the need for deterrence.  We'll address each of |
| 09:35 | 14 | those in order and then move on to the reasonableness |
| 09:35 | 15 | of the fees that Verizon is seeking. |
| 09:35 | 16 | So with respect to the substantive |
| 09:35 | 17 | strength of the case, I'm also not going to spend much |
| 09:36 | 18 | time here.  The Court is well aware that it issued a |
| 09:36 | 19 | summary judgment ruling in which it found VoIP-Pal's |
| 09:36 | 20 | arguments to try to make an infringement case as being |
| 09:36 | 21 | without merit in terms of trying to differentiate |
| 09:36 | 22 | binding Federal Circuit precedent that clearly showed |
| 09:36 | 23 | that it did not have an infringement claim that it |
| 09:36 | 24 | could be pressing forward. |
| 09:36 | 25 | As recently as last week, this Court had |

***** ████████████████████████ *****—8—

```
09:36   1   to readdress those arguments when VoIP-Pal moved for
09:36   2   reconsideration of the summary judgment.  The Court
09:36   3   upheld its ruling and found that VoIP-Pal's arguments
09:36   4   were the same that it had already made in its brief and
09:36   5   in its oral argument to the Court.
09:36   6               So that shows that not only does the case
09:36   7   have low substantive strength, it's not being
09:36   8   reasonably litigated.  VoIP-Pal continues to press its
09:36   9   arguments which are without merit.
09:36  10               Another big example that we -- or the
09:37  11   primary example that we focus on in the Verizon brief
09:37  12   as to the unreasonable manner in which this case is
09:37  13   litigated relates to damages and the damages demand
09:37  14   that VoIP-Pal pressed forward throughout the expert
09:37  15   discovery proceeding.
09:37  16               VoIP-Pal originally hired two experts,
09:37  17   and it disclosed them both in November 2022.  It then
09:37  18   went forward with only one of those two, Mr. Jacob
09:37  19   Salk, who was a first time expert.  He had no
09:37  20   experience in valuing IP, no experience in testifying
09:37  21   in any kind of case, let alone a patent infringement
09:37  22   case.  And that inexperience showed in spades.
09:37  23               He came up with a number for Verizon
09:37  24   alone that the reasonable royalty in this case was
09:37  25   5.69 billion, with a B, dollars.
```

```
09:37   1              Now, I know that Your Honor does a huge
09:38   2   number of patent cases so you probably understand just
09:38   3   how astounding that number is for damages in this case.
09:38   4   But for my own perspective, I went and looked up the
09:38   5   biggest patent damages verdicts in history.  And that
09:38   6   $5.69 billion is more than double any verdict, any
09:38   7   reasonable royalty finding that has ever been issued,
09:38   8   let alone one that's been upheld.
09:38   9              And even those cases, if you look at all
09:38  10   of the top verdicts, they are cases in which there are
09:38  11   competitors, there are lost profits, there's things
09:38  12   beyond reasonable royalty that's at stake and they
09:38  13   involve blockbuster drugs.
09:38  14              None of that is at issue here.  What we
09:38  15   are talking about is a zero dollar revenue producing
09:38  16   service that Verizon offers that is defaulted to off on
09:38  17   every phone that it sells.  And $5.6 billion was the
09:38  18   number that Mr. Salk offered.  And it's no surprise
09:39  19   that with such a high number that his report and his
09:39  20   opinions were just riddled with errors.
09:39  21              I don't plan to go through any of those.
09:39  22   Those were all laid out in our Daubert motion.  But I
09:39  23   also don't think that the Court needs to take those on
09:39  24   in order to find that this case stands out from the
09:39  25   others.
```

***** ███████████████ *****-10-

```
09:39   1              The undisputed facts, the fact that this
09:39   2   was a first time expert, the fact that he came up with
09:39   3   a $5.69 billion number, the fact that throughout the
09:39   4   expert discovery period he then had to continue to
09:39   5   correct the mistakes that he made and issue
09:39   6   supplemental reports, one of which in the Verizon cases
09:39   7   amounted to a $200 million decline in the -- or in the
09:39   8   royalty that he said was appropriate, all of those
09:39   9   things make this case stand out from others.
09:39  10              But there's even more.  After Verizon had
09:39  11   a fully briefed Daubert motion before the Court, nine
09:40  12   months after that VoIP-Pal then at that point came in
09:40  13   and said, wait a second, there are issues here.  This
09:40  14   was right before the final pretrial when Your Honor was
09:40  15   set to rule on that Daubert motion.  And VoIP-Pal said,
09:40  16   we want to go back to that other expert Mr. Brida that
09:40  17   we had retained and disclosed back in November 2022.
09:40  18   We want a new -- a redo on the report.  We want a redo
09:40  19   on our expert.  And not only that, but Mr. Brida also
09:40  20   can't make the upcoming trial so we want a new trial
09:40  21   date.
09:40  22              All of these are undisputed facts, and
09:40  23   they're before the Court.  And the only good cause that
09:40  24   VoIP-Pal had for making that request was that Verizon
09:40  25   had challenged Mr. Salk's opinion.  Verizon had
```

09:40   1    challenged the substance of his opinions, whether they

09:40   2    were legally and factually appropriate, whether they

09:40   3    could survive the 702 standard, and also the fact that

09:41   4    we had challenged his bias, his credibility and his

09:41   5    experience.

09:41   6              And when VoIP-Pal comes in with Mr. Brida

09:41   7    and their request to redo, they say, well, this shows

09:41   8    that we're being reasonable in litigating the case.  It

09:41   9    shows anything but that.  Mr. Brida then came in.  He

09:41   10   did a complete redo of the opinions.  VoIP-Pal tried to

09:41   11   then put forward not one but three new expert reports

09:41   12   to support a different reasonable royalty.  They

09:41   13   offered one from Mr. Brida, they offered a new one from

09:41   14   Mr. Minor, and they offered a third one from their

09:41   15   technical expert, Dr. Oklobdzija.

09:41   16             And the numbers, if you look at -- again,

09:41   17   these are just undisputed facts that are already before

09:41   18   the Court -- the number that Mr. Brida came up with in

09:41   19   the Verizon case dropped the reasonable royalty from

09:41   20   $5.5 billion down to $130 million if you look through

09:42   21   the expiration date of the patents, but only

09:42   22   $63.6 million if you're looking up through trial.  That

09:42   23   shows how unreasonable that $5.5 billion number was

09:42   24   that Verizon had to litigate against for a year.

09:42   25             Turning now to the need for deterrence.

‐*****                              *****‐12—

```
09:42   1    The need for deterrence in this case is particularly
09:42   2    strong.  VoIP-Pal is a serial litigant.  This case is
09:42   3    one of six that VoIP-Pal has filed against Verizon
09:42   4    alone.   Three of those cases have been in this Court,
09:42   5    and then three have been in other jurisdictions.  This
09:42   6    is one of dozens of cases that VoIP-Pal has filed
09:42   7    overall.  And like many of the cases that we cite in
09:42   8    our briefs about the need for deterrence, including the
09:42   9    AdjustaCam and the Blackbird case from the Federal
09:42   10   Circuit, VoIP-Pal's actions in dismissing many of the
09:43   11   cases that it's filed for
09:43   12   ████████████, all of that shows the need for
09:43   13   deterrence.  When VoIP-Pal gets over its skis and finds
09:43   14   itself in a jurisdiction that it finds to be favorable,
09:43   15   like the Northern District of California when it had a
09:43   16   case in particular with Verizon,
09:43   17
09:43   18
09:43   19          And that's part of the reason that we
09:43   20   think the need for deterrence from this Court in
09:43   21   particular is particularly strong.  VoIP-Pal's actions
09:43   22   suggest that they believe that this Court is going to
09:43   23   hold its frivolous claims to a different standard, that
09:43   24   this Court is the only one that's going to tolerate the
09:43   25   infringement claims that VoIP-Pal has put forward.
```

*****  ███████████████████████████  *****-13—

```
09:43    1              This Court needs to send a message to not
09:43    2    only VoIP-Pal but to other similarly situated litigants
09:43    3    to say that it will not tolerate such frivolous claims
09:44    4    and award the attorneys' fees that are requested here.
09:44    5              And turning to those fees, I'm going to
09:44    6    try to stay high level but I'm obviously prepared to
09:44    7    answer any questions that Your Honor has about the
09:44    8    amount of money that Verizon is seeking.
09:44    9              But I think on its face, the numbers of
09:44   10    the attorneys' fees that Verizon is seeking is
09:44   11    eminently reasonable.  ████████████████████████
09:44   12    ██████████████████████████, and we'd be prepared to
09:44   13    supplement that with additional fees since the filing
09:44   14    of the motion.  And so that's, you know, ████████████
09:44   15    ████████  for a case where Verizon was fighting a
09:44   16    $5.5 billion claim.
09:44   17              That's just facially reasonable.  And for
09:44   18    the reasons that we set forth in our declarations, in
09:44   19    particular, it's reasonable if you compare it to
09:44   20    similarly situated counsel, if you compare to it AIPLA
09:45   21    statistics on the amount of money that it takes to
09:45   22    litigate a case of this nature.
09:45   23              And the final point that I want to make
09:45   24    on the fees, is the number one point that VoIP-Pal had
09:45   25    in opposition.  Its first argument as to why Verizon's
```

—*****　　　　　　　　　　　*****-14—

| | | |
|---|---|---|
| 09:45 | 1 | fees weren't reasonable was Mr. Deron Dacus, our local |
| 09:45 | 2 | counsel.  VoIP-Pal argues that we simply called him too |
| 09:45 | 3 | often, we e-mailed him too much, we requested his input |
| 09:45 | 4 | too often.  He spent too many hours responding to |
| 09:45 | 5 | e-mail, providing strategy, taking telephone calls from |
| 09:45 | 6 | Verizon counsel and Verizon itself.  But those are |
| 09:45 | 7 | exactly the activities that local counsel should be |
| 09:45 | 8 | doing. |
| 09:45 | 9 | Yes, we had Mr. Dacus review every filing |
| 09:45 | 10 | from the time that he stepped into this case until its |
| 09:45 | 11 | conclusion.  We often sought his advice and strategy |
| 09:45 | 12 | considerations to make sure that we were headed in the |
| 09:46 | 13 | right direction, both substantively and procedurally, |
| 09:46 | 14 | for the way that this Court would want to do things. |
| 09:46 | 15 | He added significant value, not just to |
| 09:46 | 16 | Verizon but to the Court itself.  That's exactly what |
| 09:46 | 17 | this Court should want local counsel to be doing, to be |
| 09:46 | 18 | taking an active role.  And Mr. Dacus was doing exactly |
| 09:46 | 19 | that.  He was prepared to try the case side-by-side |
| 09:46 | 20 | with the Venable counsel.  He was prepared to argue the |
| 09:46 | 21 | Daubert motion against Mr. Salk, and the request to |
| 09:46 | 22 | substitute Mr. Salk for Mr. Brida, that we've talked |
| 09:46 | 23 | about already. |
| 09:46 | 24 | So for that reason, you know, we think |
| 09:46 | 25 | that that argument, as well as all of the others that |

-*****-                                        *****-15—

09:46  1    VoIP-Pal has made about the reasonableness of the fees

09:46  2    sought are frivolous.

09:46  3                    So unless the Court has any further

09:46  4    questions, I'll reserve the remaining time I have for

09:46  5    rebuttal.

09:46  6                    THE COURT:  Response?

09:46  7                    MR. HUDNELL:  Good morning, Your Honor.

09:47  8                    Lewis Hudnell for the plaintiff VoIP-Pal.

09:47  9                    I'm going to share my screen here, and

09:47  10   use some slides.  If you give me a second.

09:47  11                   Are you able to see my screen, Your

09:47  12   Honor?

09:47  13                   THE COURT:  I think I'm about -- yes.  I

09:47  14   can.

09:47  15                   MR. HUDNELL:  Okay.  Great.

09:47  16                   Okay.  Your Honor, so no surprise,

09:47  17   VoIP-Pal believes that Verizon's fee motion should be

09:47  18   denied.  And the main reason, Your Honor, we think it

09:47  19   should be denied is, it's just -- this case is just not

09:48  20   an exceptional case.  If you look at the case law,

09:48  21   which you've already indicated that you're familiar

09:48  22   with, exceptional case typically requires some sort of

09:48  23   clear sign that the plaintiff or the patent owner

09:48  24   should not move forward with the case.  And it's

09:48  25   usually in the form of an adverse claim construction

***** ██████████████████████ *****-16-

```
09:48   1    ruling.  And we didn't have that here.
09:48   2                The parties did dispute the construction
09:48   3    of access code request message, as you're familiar
09:48   4    with, but that didn't occur until summary judgment,
09:48   5    which you found for the defendants and Verizon.  But
09:48   6    that was at the end of the case, not at the beginning
09:48   7    of the case.
09:48   8                So there was no clear sign -- there's no
09:48   9    adverse claim construction at the beginning of the case
09:48  10    that told us that we shouldn't proceed with this case.
09:48  11    Verizon never proposed a claim construction of access
09:48  12    code request message.  There was no notice -- Verizon
09:48  13    talks about the In re Varma case, which Your Honor's
09:48  14    familiar with and that formed the basis of your summary
09:49  15    judgment ruling.
09:49  16                But they never alerted us at the
09:49  17    beginning of the case, or at any point in the case,
09:49  18    that they thought that In re Varma was binding and
09:49  19    controlled this case and that we shouldn't proceed.
09:49  20    Verizon never sent us a notice to say that our presuit
09:49  21    investigation was inadequate.  We received no notice
09:49  22    from Verizon, as a matter of fact.
09:49  23                And so, Your Honor, when you -- when
09:49  24    you -- when you look at this, and you look at the theme
09:49  25    that carries through cases that have been found to be
```

───*****  ███████████████████████████  *****─17──

09:49  1    exceptional, the facts here just don't line up.  And if

09:49  2    you go ahead and look at the cases that Verizon even

09:49  3    cited in their brief, starting with the Lumen View

09:49  4    case, you have a situation here where there was the

09:49  5    complaint about presuit investigation.  That didn't

09:49  6    happen in this case.

09:49  7              You have a situation where Lumen View

09:49  8    proposed a claim construction that they couldn't prove

09:49  9    infringement on.  That didn't happen here.  Our

09:50 10    proposed construction of access code request message

09:50 11    was one that we could prove infringement on.

09:50 12              You have a situation in Lumen View where

09:50 13    the patent owner sought nuisance value settlements.  We

09:50 14    didn't seek a nuisance value settlement in this case.

09:50 15    We haven't sought a nuisance value settlement in any

09:50 16    case.  And I'll address -- Ms. Woodworth talked about

09:50 17    our other cases in the deterrence part of her opening,

09:50 18    and I'll address that in a second, but we certainly

09:50 19    disagree that those were ████████████████████.

09:50 20              Again, another theme -- same theme that I

09:50 21    mentioned before, Your Honor.  There's no proceeding

09:50 22    with the case after an adverse Markman order.  Like in

09:50 23    the AdjustaCam case.  We didn't argue a claim

09:50 24    construction that we couldn't prove infringement on,

09:50 25    like they did in the AdjustaCam case.  There's -- there

*****                                        *****-18

| | | |
|---|---|---|
| 09:51 | 1 | was no allegation here from Verizon that we didn't |
| 09:51 | 2 | offer evidence to prove any of the limitations of the |
| 09:51 | 3 | claim, like what happened in the AdjustaCam case. |
| 09:51 | 4 | And as I already mentioned, Your Honor, |
| 09:51 | 5 | no nuisance value settlements, and I'll talk about that |
| 09:51 | 6 | a little bit more.  And no proceeding by us after an |
| 09:51 | 7 | adverse Markman ruling. |
| 09:51 | 8 | Now, in the main thrust of her -- of |
| 09:51 | 9 | Ms. Woodworth's argument today -- I need to scroll |
| 09:51 | 10 | forward here -- was about Mr. Salk.  So let's talk |
| 09:51 | 11 | about Mr. Salk. |
| 09:51 | 12 | So first, Your Honor, Verizon and |
| 09:52 | 13 | T-Mobile, they've complained that Mr. Salk was biased |
| 09:52 | 14 | and that he was a company insider, and that's just not |
| 09:52 | 15 | the case.  Even before these defendants would allow |
| 09:52 | 16 | Mr. Salk to see their confidential information when we |
| 09:52 | 17 | retained him, they made him sign a declaration |
| 09:52 | 18 | attesting to his independence, attesting to his lack of |
| 09:52 | 19 | involvement with VoIP-Pal and lack of economic interest |
| 09:52 | 20 | in VoIP-Pal. |
| 09:52 | 21 | And, yes, he had done work for -- before |
| 09:52 | 22 | for VoIP-Pal, but it's all work in anticipation of |
| 09:52 | 23 | litigation.  Just like any damages expert would do. |
| 09:52 | 24 | And Ms. Woodworth mentioned -- tried to |
| 09:52 | 25 | attack the magnitude of Mr. Salk's -- well, actually, |

*****                                                *****-19-

09:52  1   even before we get to that, let me just say, the issues

09:52  2   with respect to the magnitude of Mr. Salk's expert

09:53  3   report, the amount of damages we are seeking, his

09:53  4   methodology, all that was captured in the Daubert

09:53  5   motion briefing, which was never decided.  Those

09:53  6   motions were denied as moot when the Court granted

09:53  7   summary judgment.

09:53  8              And the magnitude of his -- his damages

09:53  9   number wouldn't have changed anything, Your Honor.

09:53  10  They would have challenged any expert that we had

09:53  11  presented.  In fact, in their reply brief, they

09:53  12  indicated that they had problems with Mr. Brida's

09:53  13  number, which is much lower than Mr. Salk's number.  So

09:53  14  that argument really just doesn't hold water, Your

09:53  15  Honor.

09:53  16             And I want to dispel this notion, Your

09:53  17  Honor, that you cannot have damages on a service that's

09:53  18  offered for free.  We hear this all the time from the

09:53  19  defendants.  It's simply not true.  There's case law

09:54  20  out there that when you -- and that says even if you

09:54  21  have a free service, there's still a way to apportion

09:54  22  the royalty so that you can figure out what percentage

09:54  23  of the service that is paid for should apply to the

09:54  24  free service.

09:54  25             We presented those cases to the

*****                    *****-20

```
09:54   1   defendants.  We've had this dispute throughout the
09:54   2   case.  There's simply no basis to say that just because
09:54   3   it's free there's no damages in the case.
09:54   4                 And, Your Honor, I would encourage you,
09:54   5   if you're going to consider all the -- the issues that
09:54   6   Verizon or T-Mobile raise in their Daubert motions
09:54   7   against Mr. Salk, that you should also read the -- and
09:54   8   you review the Salk report, you should also review the
09:55   9   Brida report where we took the affirmative extra to try
09:55  10   to address the issues that they raised in their Daubert
09:55  11   motions.  And we think that those steps were eminently
09:55  12   reasonable.
09:55  13                 We requested leave in our opposition to
09:55  14   their Daubert motion to do a redo report to try to
09:55  15   address these issues.  This Court has granted leave on
09:55  16   at least three occasions for parties to do a redo of
09:55  17   damages expert reports, specifically in the paSafeShare
09:55  18   v. Microsoft case, the Paltalk v. Cisco case, the WSOU
09:55  19   Investments versus Google case.  In all those cases,
09:55  20   the Court has granted redo.
09:55  21                 So we thought -- we thought that we were
09:55  22   trying to get ahead of this issue, rather than wait to
09:55  23   the final pretrial conference.  We thought we'd get
09:55  24   ahead of this issue, and rather than have wait to hear
09:55  25   whether the Court was going to grant us leave to
```

-*****-                              -*****-21-

09:56  1    file -- or sorry -- to serve a new damages expert

09:56  2    report, we just went ahead and did it.  We said, okay,

09:56  3    fine.  They disagree with our expert report from

09:56  4    Mr. Salk, we're going to bring in a new expert -- not a

09:56  5    new expert, Mr. Brida had already been disclosed, but

09:56  6    our other expert, have him prepare a damages report,

09:56  7    address their issues and try to get this issue decided

09:56  8    before we got to trial so that we would not delay the

09:56  9    trial.

09:56  10           If we had waited to the final pretrial

09:56  11   conference, we would -- there would be uncertainty as

09:56  12   to whether our damages expert would be in or out and

09:56  13   there would be the -- more of the potential to delay

09:56  14   the trial.  We were trying to avoid that situation,

09:56  15   Your Honor.

09:56  16           In addition, I should point out, Your

09:56  17   Honor, that even if Mr. Salk's report had been struck

09:56  18   and you had denied -- if you had granted the Daubert

09:56  19   motion and if you had denied the substitution, we would

09:57  20   have still been able to put on a damages case through

09:57  21   factual evidence.  That's what the statute requires.

09:57  22           So the issues around Mr. Salk and our

09:57  23   attempt to implement our contingency plan in case he

09:57  24   got -- in case his report got struck really don't -- do

09:57  25   not amount to object -- to an unreasonable manner to

***** ██████████████ *****-22-

| | | |
|---|---|---|
| 09:57 | 1 | litigate the case.  We were trying to be eminently |
| 09:57 | 2 | reasonable within the confines of the case. |
| 09:57 | 3 | Now, I was going to move on to |
| 09:57 | 4 | deterrence, Your Honor.  There's no need for deterrence |
| 09:57 | 5 | here.  And I think Ms. Woodworth has overstated the |
| 09:57 | 6 | number of cases that we have, or at least there's a |
| 09:57 | 7 | little bit of lack of clarity. |
| 09:57 | 8 | VoIP-Pal has filed four suits against |
| 09:58 | 9 | Verizon.  Now, three of those suits have had companion |
| 09:58 | 10 | suits either transferred or -- or litigated in a |
| 09:58 | 11 | different district.  Our first suit was filed in |
| 09:58 | 12 | Nevada, the District of Nevada.  Verizon moved to |
| 09:58 | 13 | transfer that to the Northern District of California. |
| 09:58 | 14 | That's still the same suit.  That's Suit 1. |
| 09:58 | 15 | We filed a second suit in the Western |
| 09:58 | 16 | District of Texas, and then Verizon turns around and |
| 09:58 | 17 | files a declaratory judgment action against us in |
| 09:58 | 18 | Northern California.  That's Suit 2.  We settled that |
| 09:58 | 19 | suit with Verizon. |
| 09:58 | 20 | The third suit is this suit that we're |
| 09:58 | 21 | talking about here today, and Verizon filed a |
| 09:58 | 22 | declaratory judgment action in the Northern District of |
| 09:58 | 23 | California to try to change venue of this suit.  That's |
| 09:58 | 24 | the third suit. |
| 09:58 | 25 | And then the fourth suit, Your Honor, we |

—*****— ████████████████ —*****-23—

09:59  1   actually dismissed, voluntarily, on our own, which was

09:59  2   filed in this district.

09:59  3           So there's really only been four suits.

09:59  4   Verizon has sued us twice, and on top of that, Verizon

09:59  5   has filed an ex parte re-exam against the patents in

09:59  6   this case.  Now, Verizon argues that we've resolved

09:59  7   other suits in other districts through ██████████, but

09:59  8   that really misstates what took place, Your Honor.  In

09:59  9   all those suits, those parties either received some

09:59  10  sort of transfer or filed a PTAB proceeding against us.

09:59  11          And so they were trying to move our

09:59  12  litigation out of the Western District of Texas into

09:59  13  the Northern District of California, or to the PTAB.

09:59  14          And so those suits were ████████████

10:00  15  ████████████████████████████████████████████

10:00  16  ████████████████████████████████████

10:00  17  ████████████.  And they did receive -- and I guess maybe

10:00  18  I shouldn't go into the details of the agreements.  And

10:00  19  I'll -- actually, I probably don't need to so we can

10:00  20  keep the -- we can keep the company representatives on.

10:00  21          But the bottom line is, Your Honor, all

10:00  22  those suits were resolved ████████████████████

10:00  23  with the other parties.  And we weren't trying to avoid

10:00  24  the merits of litigating these patents because we

10:00  25  actually litigated the merits of these patents in this

*****                              *****-24-

```
10:00   1   district.  And we litigated the merits of those patents
10:00   2   in the Northern District of Texas with another
10:00   3   defendant who also tried to manipulate our choice of
10:00   4   venue by moving their case from the Western District to
10:00   5   the Northern District.  In none of these cases did we
10:01   6   seek nuisance value settlements.  We're merely just
10:01   7   resolving issues attendant to litigation that have had
10:01   8   been -- where venue had been tried to change elsewhere.
10:01   9           And there's really no need for deterrence
10:01  10   here, Your Honor, because we've shown restraint.  As I
10:01  11   mentioned, we dismissed our fourth suit against Verizon
10:01  12   shortly after Your Honor granted summary judgment.
10:01  13   We're like, hey, you know what?  Let's not go forward
10:01  14   with this suit.
10:01  15           So again, Your Honor, we don't think
10:01  16   deterrence is a valid consideration for fees here.
10:01  17           Moving on to the reasonableness of
10:01  18   Verizon's fees, we really just have three issues, Your
10:02  19   Honor, and I'm actually going to go back to the slides
10:02  20   for this.
10:02  21           MS. WOODWORTH:  And Lewis, I would just
10:02  22   remind you that if you do get into the details to
10:02  23   please ask the T-Mobile counsel and team --
10:02  24           MR. HUDNELL:  Oh, yes.  This is going to
10:02  25   show that.  Yes.  So if you want the T-Mobile to --
```

| | |
|---|---|
| 10:02 | 1 |

team to drop off, this would be the --

          MS. TESSAR:  Could I suggest just in the interest of making this as efficient as possible for the Court that maybe we can drop off at the end for you guys to address the Verizon's specific fees issues and, meanwhile, if I could be heard just quickly on the merits before we need to exit.

          THE COURT:  That's fine with me.

          Mr. Hudnell, why don't we do this, why don't you finish up everything you need other than what you're about to talk about with regard to fees. Whenever you're finished, I'll hear from other counsel. And then if you need to get into fees, we'll let counsel talk and we'll take that up.

          MR. HUDNELL:  That's fine, Your Honor.

          So let me just -- let me just sum up then, Your Honor, on the objectively baseless part of the case.

          This case does not line up with any of the themes that have been found in cases to lead to an exceptional case finding.  Our choice of Mr. Salk and the effort that we took to correct his report and substitute him for Mr. Brida was not unreasonable. There's no need for a deterrence in this -- in this case, and therefore we think the motion should be

***** ██████████████ *****-26

```
10:03   1   denied.
10:03   2                   THE COURT:  Okay.  A response?
10:03   3                   MS. TESSAR:  You want to hear from
10:03   4   T-Mobile first or do you want Verizon's response?
10:03   5                   THE COURT:  Whoever wants to respond just
10:03   6   on the merits, please.
10:03   7                   MS. TESSAR:  Yep.  I'll go ahead then.
10:03   8                   So we agree that everything Verizon said
10:04   9   is more than sufficient to establish the exceptionality
10:04  10   of this case.  But for T-Mobile we also have a number
10:04  11   of other issues that even further raise the
10:04  12   exceptionality situation here and make this stand out.
10:04  13   And I want to flag those for the Court because we think
10:04  14   that they are really quite remarkable.
10:04  15                   The first is T-Mobile was a real
10:04  16   innovator in WiFi calling, and they were the first of
10:04  17   the carriers to launch a WiFi calling system.  And they
10:04  18   did that before any alleged priority date for the
10:04  19   asserted patents.
10:04  20                   We produced a mountain of evidence on
10:04  21   that.  Our product at that time marketed under the name
10:04  22   "HotSpot@Home."  We produced TV commercials.  We
10:04  23   produced New York Times articles.  We produced local
10:04  24   industry recognition.  We produced internal technical
10:04  25   documents.  All of that was out there, and at the end
```

\*\*\*\*\* ██████████████████████████████ \*\*\*\*\*-27—

| | | |
|---|---|---|
| 10:04 | 1 | of the day, VoIP-Pal had no response for why all of |
| 10:05 | 2 | that prior art system, which operated identically to |
| 10:05 | 3 | the accused system because the accused system was just |
| 10:05 | 4 | a new improved version on that, VoIP-Pal had no |
| 10:05 | 5 | technical response for why that early system was |
| 10:05 | 6 | different.  They were accusing exactly the prior art. |
| 10:05 | 7 | Their position was that all of that |
| 10:05 | 8 | information that we produced had been planted.  They |
| 10:05 | 9 | had a technical expert offer that opinion.  So |
| 10:05 | 10 | Dr. Oklobdzija came in, and he said that it was fake |
| 10:05 | 11 | news, that we or someone else had in 2006 planted all |
| 10:05 | 12 | of this material.  And they denied -- that was their |
| 10:05 | 13 | only rejoinder on that issue in that point. |
| 10:05 | 14 | And we think that that is pretty |
| 10:05 | 15 | exceptional.  VoIP-Pal has argued that the Court can't |
| 10:05 | 16 | consider that issue or that point because it's not the |
| 10:06 | 17 | issue that at the end of the day the case was decided |
| 10:06 | 18 | on.  The Supreme Court is clear that that is not the |
| 10:06 | 19 | case, that we can get our fees for the entirety of the |
| 10:06 | 20 | work that was done.  And there was a lot of work done |
| 10:06 | 21 | relating to the HotSpot@Home issues.  There were |
| 10:06 | 22 | multiple motions filed by VoIP-Pal on that issue. |
| 10:06 | 23 | And that issue is directly related to |
| 10:06 | 24 | another issue that was specific to T-Mobile, which was |
| 10:06 | 25 | the inequitable conduct defense because as the Court |

***** ████████████████████ *****-28

| | | |
|--|--|--|
| 10:06 | 1 | probably recalls, we unearthed evidence internal to |
| 10:06 | 2 | VoIP-Pal that VoIP-Pal had known about T-Mobile's WiFi |
| 10:06 | 3 | calling system, told their patent prosecutor that that |
| 10:06 | 4 | WiFi calling system was not relevant -- this is before |
| 10:06 | 5 | they had accused it -- and then internally had |
| 10:06 | 6 | instructions from the CEO to other employees at |
| 10:06 | 7 | VoIP-Pal that they should not share information about |
| 10:07 | 8 | prior art with the patent prosecutor. |
| 10:07 | 9 | So that's the kind of information that |
| 10:07 | 10 | is -- you know, that kind of evidence, you don't often |
| 10:07 | 11 | get it.  It was so direct.  It was so on point.  It was |
| 10:07 | 12 | specific to our product and, you know, we would submit |
| 10:07 | 13 | that that also is a reason that the case was |
| 10:07 | 14 | exceptional.  It was also an issue that created a lot |
| 10:07 | 15 | of other work including relating to the privilege |
| 10:07 | 16 | waiver issues that the Court is familiar with and also |
| 10:07 | 17 | the opposed motion to amend to add the inequitable |
| 10:07 | 18 | conduct defense to the case which the Court did |
| 10:07 | 19 | ultimately grant. |
| 10:07 | 20 | So I will stop there.  I don't want to |
| 10:07 | 21 | belabor it.  I just want to make the point that |
| 10:07 | 22 | T-Mobile does have additional merits issues that we |
| 10:07 | 23 | really do believe make this case stand out from the |
| 10:07 | 24 | crowd.  Thank you. |
| 10:07 | 25 | THE COURT:  And we can go back, and we |

*****　　　　　　　　　　　*****-29

```
10:07   1   can have a full response, or we can let you all drop
10:07   2   off and we can hear -- why don't we let you all drop
10:07   3   off.
10:07   4                MS. TESSAR:  We can absolutely drop off
10:08   5   if everybody's done on merits.  I haven't touched any
10:08   6   of the fees issues yet on this, so we'll get back on.
10:08   7                THE COURT:  So we'll -- I'll let
10:08   8   Mr. Hudnell jump back on the fees, and we should be
10:08   9   wrapped up by 10:30, I think.  And then if you all --
10:08  10   if T-Mobile would join back on at 10:30, that'd be
10:08  11   great.
10:08  12                MS. TESSAR:  That sounds perfect.  We
10:08  13   will come back then so wait for Mr. Hudnell's response
10:08  14   at 10:30.
10:08  15                THE COURT:  Yes.  Thank you.
10:08  16                MS. TESSAR:  Outstanding.  Have a great
10:08  17   day, everybody.  We'll see you soon.
10:08  18                THE COURT:  Thank you.
       19                (T-Mobile hearing paused.)
10:08  20                THE COURT:  Mr. Hudnell, if you'd like to
10:08  21   wrap up, and then I'll hear any response we have.
10:08  22                MR. HUDNELL:  Thank you, Your Honor.  Has
10:08  23   everyone who's dropped -- dropped off who needed drop
10:08  24   off?
10:08  25                Okay.
```

*****  ██████████████████  *****-30—

10:09  1              MS. WOODWORTH:  I believe so.  Thank you,

10:09  2    Lewis.

10:09  3              MR. HUDNELL:  And, Your Honor, are you

10:09  4    seeing my screen again?

10:09  5              THE COURT:  Yes.  I'm good.

10:09  6              MR. HUDNELL:  Okay.  So I just wanted to

10:09  7    address a few issues with respect to Verizon's fee

10:09  8    request.  And so the first issue, Your Honor, is

10:09  9    Verizon did not produce its fee agreement with its

10:09  10   counsel.  And so it's a little bit difficult for us to

10:09  11   figure out why certain charges were made and then the

10:09  12   way that they were made.

10:09  13             So for example here, Your Honor, if we

10:09  14   look at Table 1, and this is the declaration of Frank

10:09  15   Cimino that was submitted with their report,  ██████████

10:10  16   ████████████████████████████████████████████████

10:10  17   ████████████████████████████████████████████

10:10  18             And if I scroll through here -- and I'm

10:10  19   not sure why my screen is not scrolling.  There we go.

10:10  20   Verizon's only asking for fees for the after the close

10:10  21   of fact discovery through the final pretrial conference

10:10  22   and then I'm assuming fees in connection with this

10:10  23   motion.  But let's put that to the side for a second.

10:10  24                               ████████████████████████████

10:10  25   ████████████████████████, we can take out initial case

***** ████████████████████████ *****-31—

10:10  1   development because Verizon's not seeking that.  We can

10:10  2   take out the trial, ███████████████████████████████

10:10  3   ████████████████████.  And that leaves fact and expert

10:10  4   discovery and summary judgment and pretrial.

10:10  5            So Verizon's -- ██████████████████████████

10:10  6   ██████████████████████████████████████████████████

10:11  7   ███████.  If we subtract off the summary judgment and

10:11  8   pretrial, which did occur after fact discovery, ███████

10:11  9   ████████████████████.

10:11  10            But then the problem becomes, Your Honor,

10:11  11  because we don't know the specifics of their

10:11  12  arrangement with -- ██████████████████████████████████

10:11  13  ██████████████████████████████████████████████████

10:11  14  ██████████████████████████████████████████████████

10:11  15  ██████████████████████ ██████████████████████████

10:11  16  ██████████████████████████████████████████████████

10:11  17  ██████████████████████████████.

10:11  18            So what they try to do, Your Honor, in

10:11  19  Table 3 is at least give some explanation to that.  But

10:11  20  we still think that this table here doesn't answer that

10:11  21  question.

10:11  22            And so, Your Honor, we had a fact

10:11  23  discovery close in February of 2023, February 2nd to be

10:12  24  exact.  And then, Your Honor, we had rebuttal expert

10:12  25  reports, which were served March 28th of 2023.  And

***** ███████████████████ *****-32

10:12  1    this date is significant, Your Honor, because this is

10:12  2    the -- this is the date that we assert that they first

10:12  3    disclosed their single message theory for the access

10:12  4    code request message issue that determined summary

10:12  5    judgment.  And there's, you know, disputes about that

10:12  6    and, you know, there's briefing on that about, you

10:12  7    know, when this was actually disclosed, but our

10:12  8    position is they didn't disclose it before

10:12  9    February 28th, 2023.  And then expert discovery closes

10:12  10   on 4/14/23.

10:12  11             So given that the issue that they

10:12  12   actually resolved this case didn't appear until

10:13  13   March 28th, 2023, we think these two amounts, Your

10:13  14   Honor, ████████████████████████████████████████

10:13  15   ██████████████████████

10:13  16             Similarly, Your Honor, because we do not

10:13  17   have insight into how Verizon -- well, let me back up a

10:13  18   step.  Because we don't have insight into how ████████

10:13  19   ████████████████████████████████████████████

10:13  20   ███████████████████████████████████████████████

10:13  21   ███████████████████████████████████████████████

10:13  22   █████████████████████████████████████

10:13  23             But the problem, Your Honor, is we --

10:13  24   there's no way to know, well, ███████████████████████

10:13  25   ███████████████████████████████████████

***** ██████████████████████ *****-33—

10:13  1     ████    There's no support for that in their showing.

10:13  2            And the significant one here, Your Honor,

10:13  3     is occurring in August 2023, ███████████████████

10:14  4     ████████████████████████████████

10:14  5     But, again, there's no -- there's no -- ████████████

10:14  6     ████████████████████████████████

10:14  7     ██████████████████████████████████

10:14  8     ██████████  ████████████████████████

10:14  9     ███████████████████████████

10:14  10           And this is assuming that you even get to

10:14  11    fees, Your Honor.  Obviously, we don't think any fees

10:14  12    are appropriate, but if you did get to fees, ████████

10:14  13    ████████████████████████████      And

10:14  14    additionally, as I mentioned before, we think these

10:14  15    fees, before they actually disclosed the theory that

10:14  16    they prevailed on, should be excluded, ████████████

10:14  17    ████████████████████████

10:14  18           And then with respect to Mr. -- Verizon's

10:15  19    local counsel, Mr. Dacus, Your Honor, we went in and

10:15  20    were able to show that of the ███ hours that he spent

10:15  21    on this case, ███ of them were spent sending e-mail and

10:15  22    ███ of them were spent on teleconference calls and

10:15  23    e-mails.  And if you calculate that, ████████████████

10:15  24    ████████████████████████████

10:15  25    ████████████████████, and change, was related

10:15   1   to e-mails and teleconferences.

10:15   2               And we're not trying to say that, you

10:15   3   know, Verizon shouldn't have had local counsel and

10:15   4   shouldn't have relied on local counsel, and we're

10:15   5   certainly not saying that local counsel is not -- is

10:15   6   not valuable.  But when you consider that their fee

10:15   7   request -- that this e-mail and telephone expenditure

10:16   8   of their local counsel is roughly 20 percent of their

10:16   9   entire fee request, and considering that their local

10:16   10  counsel did not argue any motions, he didn't take any

10:16   11  depositions, he didn't appear and argue before the

10:16   12  Court, we think that this percentage of the fee

10:16   13  request, it's just excessive.

10:16   14              Not that it's not valuable, it's just we

10:16   15  think that it's excessive.  And we've cited cases where

10:16   16  Courts have reduced fee requests because of the amount

10:16   17  of e-mail -- time spent on e-mail and in

10:16   18  teleconference.

10:16   19              To give you a point of comparison, Your

10:16   20  Honor, and without revealing any T-Mobile confidential

10:16   21  information, this number for Mr. Dacus' e-mail and

10:16   22  teleconference is larger than the number that T-Mobile

10:17   23  is seeking in their fee request for their local

10:17   24  counsel, who was involved in the entire case.

10:17   25              As I think Ms. Woodworth mentioned, but

***** ██████████████████████████ *****-35-

```
10:17   1    if she didn't, Mr. Dacus didn't appear in this case
10:17   2    until after fact discovery closed.  And so we think
10:17   3    it's excessive that after fact discovery closed, ██
10:17   4    ████████████████████████████████████████████████████
10:17   5    ██████████████████████████████████████████████
10:17   6              So with that, Your Honor, I just
10:17   7    reiterate that we don't think this case is exceptional
10:17   8    and that fees shouldn't be awarded, but if you were to
10:17   9    get to that point, we think that there are problems
10:17  10    with Verizon's fee request and it should be reduced for
10:17  11    the reasons that I've stated.
10:17  12              Thank you.
10:17  13              THE COURT:  Response?
10:17  14              MS. WOODWORTH:  All right.  Thank you,
10:17  15    Your Honor.  Megan Woodworth again for Verizon.
10:18  16              And we were just talking about Mr. Dacus,
10:18  17    so I'll tell you that one piece of advice that he gave
10:18  18    me was to be as succinct as possible.  So I will try to
10:18  19    do that on rebuttal.
10:18  20              The first point that Mr. Hudnell raised
10:18  21    was with respect to the cases.  And I would urge Your
10:18  22    Honor, if you haven't read those cases -- I think that
10:18  23    we are far more exceptional in terms of what's gone on
10:18  24    in this case than any of those, in particular, the
10:18  25    AdjustaCam case that Mr. Hudnell raised.
```

| | | |
|---|---|---|
| 10:18 | 1 | He said that there, there was issues with |
| 10:18 | 2 | the presuit investigation, and the quote that he used |
| 10:18 | 3 | was:  The most basic presuit would have shown the |
| 10:18 | 4 | errors in their infringement case. |
| 10:18 | 5 | The same is true here.  The most basic |
| 10:18 | 6 | presuit investigation, reading In re Varma, would have |
| 10:18 | 7 | shown VoIP-Pal that it could not go forward on its |
| 10:18 | 8 | three-message theory. |
| 10:18 | 9 | The other issue that I take, though, with |
| 10:18 | 10 | the AdjustaCam case is, if -- in the district court |
| 10:18 | 11 | case there, the district court did not award fees |
| 10:19 | 12 | because it did exactly what Mr. Hudnell is urging the |
| 10:19 | 13 | Court to do here, that VoIP-Pal's urging the Court to |
| 10:19 | 14 | do here, which is to only look at the issues that were |
| 10:19 | 15 | actually decided.  The Federal Circuit said that is not |
| 10:19 | 16 | how a Court must look at attorneys' fees; it's got to |
| 10:19 | 17 | look at the totality of the circumstances. |
| 10:19 | 18 | So there, even though the plaintiff had |
| 10:19 | 19 | voluntarily dismissed its infringement claim right |
| 10:19 | 20 | before summary judgment, the Court said that it needed |
| 10:19 | 21 | to go ahead and look at the merits of the infringement |
| 10:19 | 22 | claim.  So following Mr. Hudnell's advice to put the |
| 10:19 | 23 | Court's head in the sand with respect to Mr. Salk, and |
| 10:19 | 24 | with respect to the opinions that he issued, would run |
| 10:19 | 25 | counter to the AdjustaCam case. |

—*****                                    *****-37—

| | | |
|---|---|---|
| 10:19 | 1 | Mr. Hudnell suggested that there are no |
| 10:19 | 2 | nuisance value settlements.  I too will not get into |
| 10:19 | 3 | the details of those, |
| 10:19 | 4 | |
| 10:19 | 5 | |
| 10:19 | 6 | It shows even more unreasonably the |
| 10:20 | 7 | lengths that VoIP-Pal was willing to go to to avoid -- |
| 10:20 | 8 | to avoid either venues that it did not want to litigate |
| 10:20 | 9 | or to avoid the PTAB finding its patents invalid. |
| 10:20 | 10 | Mr. Hudnell also suggested that this case |
| 10:20 | 11 | did not involve one where VoIP-Pal was proceeding after |
| 10:20 | 12 | an adverse claim construction.  The entirety of this |
| 10:20 | 13 | case, though, was based upon a frivolous version of |
| 10:20 | 14 | Federal Circuit binding precedent.  And VoIP-Pal |
| 10:20 | 15 | absolutely continued to press -- even after this Court |
| 10:20 | 16 | said that those arguments were without merit, VoIP-Pal |
| 10:20 | 17 | continued to press exactly the same arguments in its |
| 10:20 | 18 | request for a reconsideration.  That too shows how |
| 10:20 | 19 | unreasonable this case is. |
| 10:20 | 20 | With respect to Mr. Brida, again, as I |
| 10:20 | 21 | anticipated, the argument was that this shows |
| 10:20 | 22 | reasonableness in trying to have a redo, but even in |
| 10:20 | 23 | VoIP-Pal's briefs to this Court on attorneys' fees, it |
| 10:21 | 24 | says that in getting a redo, it would have been |
| 10:21 | 25 | appropriate had it -- had the Court granted that, it |

| | | |
|---|---|---|
| 10:21 | 1 | would have been appropriate for the Court to award |
| 10:21 | 2 | fees. |
| 10:21 | 3 | This is on Page 15 of its opposition. |
| 10:21 | 4 | It's got a number of cases in Footnote 1 where it's |
| 10:21 | 5 | collecting cases that costs -- that it's appropriate |
| 10:21 | 6 | for a Court to award costs associated with an expert |
| 10:21 | 7 | substitution.  So the same is true in the context of |
| 10:21 | 8 | 285.  It's also appropriate.  It's also an appropriate |
| 10:21 | 9 | fact in the totality of the circumstances for the Court |
| 10:21 | 10 | to consider that substitution and that request for |
| 10:21 | 11 | substitution in deciding that fees are appropriate |
| 10:21 | 12 | here. |
| 10:21 | 13 | With respect to the terms, Mr. Hudnell is |
| 10:21 | 14 | leaving out two additional cases.  There was no |
| 10:21 | 15 | miscounting.  But he's leaving out two additional |
| 10:21 | 16 | antitrust and class action cases that VoIP-Pal has |
| 10:21 | 17 | brought more recently in a different jurisdiction.  And |
| 10:21 | 18 | it's noteworthy that those cases were actually served |
| 10:22 | 19 | the day after this Court issued its request for |
| 10:22 | 20 | reconsideration. |
| 10:22 | 21 | They've just been sitting in the district |
| 10:22 | 22 | court of -- of District of Columbia, have not been |
| 10:22 | 23 | served until this Court issued its request -- issued |
| 10:22 | 24 | its denial of the request for reconsideration. |
| 10:22 | 25 | Again, this appears to be an attempt by |

───*****──████████████████████████──*****─39──

```
10:22   1   VoIP-Pal to keep its petty stock pumped up and to keep

10:22   2   the pressure on Verizon when its last-ditch effort in

10:22   3   this venue had fallen.

10:22   4              And then finally, as to the

10:22   5   reasonableness of the fees that are sought,

10:22   6   Mr. Hudnell's presentation was about what's included

10:22   7   versus what's ████████████████████████████████

10:22   8   ████████████████████████████████████████████████████

10:22   9   ██████████████████████   Obviously, that's

10:22  10   privileged, but it's also not necessary.  This is all a

10:22  11   complete red herring.

10:22  12              The Court looks at what fees are

10:22  13   appropriate under the lodestar method, which looks at

10:23  14   what were the number of hours of fees, what were the --

10:23  15   what were the activities that were required to be

10:23  16   performed?  Are those hours reasonable for the

10:23  17   activities required, and are the rates reasonable?

10:23  18              Here, there's no argument that they were.

10:23  19   Even the comparison in Table 3 that's set forth in our

10:23  20   declaration shows that ████████████████████████████

10:23  21   ████████████████████████   ██████████████████

10:23  22   ██████████████████████████████

10:23  23   ██████████████████████████████████████

10:23  24   ██████████████████████████████

10:23  25   ██████████████████
```

***** ███████████████████████ *****-40—

10:23  1           But if the Court does need detail, I'm

10:23  2   happy to answer any questions, but it's also all laid

10:23  3   out. ███████████████████████████████

10:23  4   ████████████████████████████████████████████

10:23  5   ███████████████  ██████████████████████████████

10:23  6   ██████████████████████████████████████████

10:23  7   ██████████████████████████████████████

10:24  8   ███████████████

10:24  9           So all of this is reasonable under the

10:24  10  lodestar method.  And no showing has -- there's been no

10:24  11  showing made that anything was excessive.

10:24  12          Thank you, Your Honor, for your time

10:24  13  today.  And unless you have any further questions, that

10:24  14  completes Verizon's submission.

10:24  15          THE COURT:  Mr. Hudnell?

10:24  16          MR. HUDNELL:  Yes.  May I respond to

10:24  17  that, briefly?

10:24  18          THE COURT:  Please.

10:24  19          MR. HUDNELL:  Thank you.

10:24  20          So first, I want to be clear, Your Honor,

10:24  21  Verizon's argument is that -- with respect to the

10:24  22  objectively baselessness part of the case, their

10:24  23  argument is that simply because In re Varma existed

10:24  24  this case should have not gone forward.

10:24  25          Now, first, they've cited no case that a

| | | |
|---|---|---|
| 10:24 | 1 | Court's found a case exceptional because there was some |
| 10:24 | 2 | decision from another court involving another patent |
| 10:24 | 3 | involving different claims, that that part -- that a |
| 10:25 | 4 | party ignored and then proceeded with his case.  That |
| 10:25 | 5 | hasn't happened.  They had -- there's no authority for |
| 10:25 | 6 | that, Your Honor. |
| 10:25 | 7 | In re Varma is not binding on this Court. |
| 10:25 | 8 | Like I said, it deals with a different patent, |
| 10:25 | 9 | different claims.  Yes, the Court used In re Varma to |
| 10:25 | 10 | grant Verizon's summary judgment, but In re Varma had |
| 10:25 | 11 | been distinguished by another Court before we even got |
| 10:25 | 12 | to that point.  So it did not control this case. |
| 10:25 | 13 | We had a reasonable argument for our -- |
| 10:25 | 14 | for our interpretation.  And Verizon, if you actually |
| 10:25 | 15 | go back and look at their summary judgment motion, they |
| 10:25 | 16 | even agree that the argument that we were making was at |
| 10:25 | 17 | least -- was at least part of the way plausible.  And |
| 10:25 | 18 | what I mean by that is they agree that you could have |
| 10:25 | 19 | one or more access code request messages as long as |
| 10:25 | 20 | both -- all the messages had a callee identifier and a |
| 10:25 | 21 | location identifier. |
| 10:26 | 22 | Our argument was just one -- taking that |
| 10:26 | 23 | argument one step further.  There's nothing |
| 10:26 | 24 | unreasonable or objectively baseless about it, and it |
| 10:26 | 25 | certainly wasn't controlled by In re Varma. |

***** ███████████████████████ *****-42

```
10:26   1              The second thing I wanted to point out,
10:26   2    Your Honor, has to do with what Ms. Woodworth just said
10:26   3    about the fees in connection with the substitution
10:26   4    motion.  So first, remember, the Daubert motion was not
10:26   5    granted.  The substitution motion wasn't even addressed
10:26   6    or decided either.
10:26   7              But what we were trying to say, Your
10:26   8    Honor, is in connection with that substitution motion,
10:26   9    if you were going to grant the substitution, we had
10:26  10    recognized at that point that that may entail
10:26  11    compensating Verizon for some of the fees associated
10:26  12    previously with preparing and addressing the Salk
10:26  13    report.
10:26  14              We were aware that Courts had awarded
10:27  15    some compensation if they were going to allow the
10:27  16    substitution, but we weren't making an admission that
10:27  17    that was a fact that should be taken into account, or
10:27  18    an admission that, well, now fees should be awarded
10:27  19    under 285 in this case.  That was limited to the
10:27  20    context of the substitution motion, which had never
10:27  21    been decided.
10:27  22              Lastly, Your Honor, your -- Ms. Woodworth
10:27  23    was right to correct me that -- that there are -- in
10:27  24    terms of deterrence, she was right to correct me that
10:27  25    there are the antitrust cases which are pending.  I was
```

***** ███████████████████████ *****-43-

| | | |
|---|---|---|
| 10:27 | 1 | really merely focused on the patent cases, and that |
| 10:27 | 2 | there's been four patent cases with In re Varma -- I'm |
| 10:27 | 3 | sorry -- with Verizon. |
| 10:27 | 4 | And the reason I was focused on that, |
| 10:27 | 5 | Your Honor, is because there's been -- there's no |
| 10:27 | 6 | allegation that our conduct -- there's no -- there's no |
| 10:27 | 7 | relationship between these cases and the antitrust |
| 10:28 | 8 | cases in terms of our conduct.  There's no evidence |
| 10:28 | 9 | here that we've been unreasonable in the antitrust |
| 10:28 | 10 | cases. |
| 10:28 | 11 | I'm not involved in the antitrust cases, |
| 10:28 | 12 | but I -- but they are very early stage, as |
| 10:28 | 13 | Ms. Woodworth said, they were literally just served; |
| 10:28 | 14 | but there's no -- there's no evidence that the conduct |
| 10:28 | 15 | in those cases had any relationship to the conduct in |
| 10:28 | 16 | this case -- to these cases and should be used by this |
| 10:28 | 17 | Court to determine that deterrence is needed and award |
| 10:28 | 18 | attorneys' fees. |
| 10:28 | 19 | And so for that reason, Your Honor -- for |
| 10:28 | 20 | all those reasons, Your Honor, we think that Verizon's |
| 10:28 | 21 | motion should be denied. |
| 10:28 | 22 | THE COURT:  From Verizon? |
| 10:28 | 23 | MS. WOODWORTH:  Nothing further, Your |
| 10:28 | 24 | Honor. |
| 10:28 | 25 | THE COURT:  Okay.  Okay.  The Verizon |

*****   █████████████████   *****-44

| | | |
|---|---|---|
| 10:28 | 1 | lawyers are welcome to drop off.  I think we're about |
| 10:28 | 2 | to get the other folks back on, and we'll get to work |
| 10:29 | 3 | on an order in the case.  And unless there's anything |
| 10:29 | 4 | else we need to take up for Verizon, I think we're |
| 10:29 | 5 | good. |
| 10:29 | 6 |                 MS. WOODWORTH:  Yeah.  The only other |
| 10:29 | 7 | thing I would say, Your Honor, is that we did make a |
| 10:29 | 8 | request to supplement our fee -- the fees requested for |
| 10:29 | 9 | the time from the filing of the -- |
| 10:29 | 10 |                 THE COURT:  You're welcome -- you're |
| 10:29 | 11 | welcome to have it. |
| 10:29 | 12 |                 MS. WOODWORTH:  Do you want us to |
| 10:29 | 13 | supplement that now or to wait for Your Honor's ruling? |
| 10:29 | 14 |                 THE COURT:  I would go ahead and |
| 10:29 | 15 | supplement now so I'll have all the information. |
| 10:29 | 16 |                 MS. WOODWORTH:  Okay.  Will do, Your |
| 10:29 | 17 | Honor.  Thank you. |
| 10:29 | 18 |                 THE COURT:  You bet. |
| 10:29 | 19 |                 MS. WOODWORTH:  Have a nice day. |
| 10:29 | 20 |                 THE COURT:  Thank you, ma'am. |
| 10:29 | 21 |                 (Hearing adjourned.) |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

***** ████████████████████ *****-45

1    UNITED STATES DISTRICT COURT )

2    WESTERN DISTRICT OF TEXAS     )

3

4

5                I, Kristie M. Davis, Official Court

6    Reporter for the United States District Court, Western

7    District of Texas, do certify that the foregoing is a

8    correct transcript from the record of proceedings in

9    the above-entitled matter.

10                I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13                Certified to by me this 7th day of March

14   2025.

15

16                         /s/ Kristie M. Davis
                           KRISTIE M. DAVIS
                           Official Court Reporter
17                         PO Box 20994
                           Waco, Texas 76702
18                         (254) 666-0904
                           kmdaviscsr@yahoo.com
19

20

21

22

23

24

25